Lesse of EWARD CALDWELL and ELEANOR his wife, and JAMES M'SWINE and BRIDGET his wife, *against* JOHN FERGUSON.

Words in a will "I give to H, now in Ireland, or his heirs, 200 acres of patented land part of a patent for 300 acres; and the other undivided 100 acres I leave to B according to the judgment of my executors in dividing the same," passed an estate in fee simple to both devises, the lands being wholly wood-land and unimproved.

THIS cause came before the court, on a point reserved at the trial at Sunbury, October 20th 1797.

M'Kean, C. J.    John M'Faddin by his will dated 15th June, 1772, devises as follows:—

"Touching such worldly estate wherewith it hath pleased Almighty God to bless me in this life, I give demise and dispose of the same in the following manner and form :—First, I give and bequeath to my well beloved brother Hugh M'Faddin, [now in Ireland, or his heirs,*] two hundred acres of patented land, on the waters of Warrior's Run, as mentioned in the patent of said tract of three hundred acres, and the other undivided one hundred acres, I leave to my dear nephew Bernard Ferril, according to the judgment of my executors in dividing the same."

At the time of making the will, the testator was seized in fee of a tract of land, containing 300 acres, which was then in its natural state, there being no part of it cleared, nor any building or inhabitant upon it.    After his death, Bernard Ferril had 100 acres divided off to him, built a house, cut down trees, grubbed, fenced and improved upon it, and afterwards sold and conveyed it *bona fide*, and for a valuable consideration, to William Sawyers, who in like manner sold and conveyed it to the defendant.    The wives of the lessors of the plaintiff are the heirs at law of the devisor, and a verdict passed for the defendant.

The point reserved is, whether Bernard Ferril had by the will, an estate in fee, or for life only, in the 100 acres?    If the former, judgment is to be entered for the defendant on the verdict; but if the latter, then a new trial is to be awarded without costs.

By the statute of 34 and 35 Hen. 8, c. 5, § 4, a person sezied in fee of land, &c. may dispose of them by will, at his pleasure.    The pleasure or intention of the testator in his will must then govern ; but this must be collected from the whole will together, applied to the subject matter to which the will relates, and not inconsistent with the rules of law. 3 Burr. 1622.    a

The construction of a will must have relation to the time of making the same, and not the time of the death of the testator.

*These words were interlined in the original will.

1 Vez. 295. Any charge of a gross sum gives a fee. A devise implies a bounty, a benefit. A devisee must be meant to be benefited. It is not enough, that he probably may be no loser. Moor. 853, 873. 2 Mod. 25, 26.

It is argreed, that a devise without the limitation of any estate, carries but an estate for life. Skin. 339, 563. Cro. Car. 368, 449. 3 Burr. 1623, 1898.

Particular cases serve rather to obscure and confound than to illuminate questions of this kind. And there is no case in the English law books that tallies with the present, for the subject matter of this devise was one hundred acres of land in its natural state, no industry of man having ever been exercised upon it. But from the general rules of construction, which I have stated may be inferred, that the testator intended to give a fee to Bernard Ferril. He has declared, that he meant to dispose of all his worldly estate, and that he would leave nothing to descend; in conformity thereto, he has given away all his land to his brother in Ireland, and to his nephew then in Pennsylvania, and his moneys that may arise after his debts and funeral expenses should be paid, to his said nephew. He thought he had made a complete disposition of the whole.

Again, if a devise being charged with the payment of a sum of money in gross, will create a fee on the ground that the devisee might otherwise be a loser, by dying before he could receive the amount out of the profits of the estate, why should not the same construction be made, and conclusion drawn, if he might be a loser in any other way? Now in this case, Bernard Ferril might have incurred great expenses in clearing the land of the trees and underwood, erecting buildings, planting orchards, making meadows and inclosures, (most of which were necessarily to be done before he could reap any benefit from the devise,) and dies soon after; so that the devise, if construed only for life, instead of being beneficial, might prove very injurious to him, which would be repugnant to the nature of such a gift, and contrary to the intention of the giver; who must therefore have meant to give him the fee.

Besides, if the devise was determined to be only for life, by committing waste, according to the English law, the life estate was liable to forfeiture; and the devisee could derive no advantage from the land, without doing acts which by that law, must be deemed waste. To avoid this, Bernard Ferril must be adjudged to take a fee; and on the whole, I am of opinion, that judgment should be entered for the defendant.

Shippen J. It is certainly a settled rule of law, that in a devise

of land by the will of even an illiterate man, who knows nothing of the use of words of limitation, if no such words are added, or other words which show his intention to give a greater estate than for life it must be construed an estate for life only.

But wherever there are expressions in a will, which the court can lay hold of, to enlarge the estate of the devisee, they will do so, to effectuate the intention of the testator.

The preamble of this will, makes use of the words "touching his worldly estate." There have been various opinions in the books, respecting the effect of these words in a will. The latest cases however show, that though these words alone will not do, yet they amount to a strong circumstance, connected with other records, to demonstrate the testator's intention of enlarging a particular estate. Upon this principle, is a case in Cowp. 357, where after introductory words "touching my worldly estate," the following words were subjoined to a particular devise of land, "to be freely possessed and enjoyed," and were adjudged to give a fee.

The devise in the case under our consideration, is short, and there are but few words to illustrate the intention of the testator. There are however some, which cannot fail to impress an idea, that he meant to give a greater estate than for life. He appears to be entirely ignorant of the use of words of limitation, but he takes notice that the land he devises, is patented land; which shows that he had it in his mind, that he had a legal estate in fee simple in the premises, and not expressly restraining the duration of the estate, is one circumstance, (though I own but a slight one of itself,) to show he meant to give the whole estate, that he himself had in it, to his devisees. But further, he directs his executors to divide these hundred acres, from the quantity of two hundred acres he had immediately before devised to his brother in Ireland, the whole being one tract of 300 acres granted to him by patent. It appears to me, that the divisions of this land, must have been useless and nugatory, unless he meant to give an absolute property to his devisees in their several parts.

It is agreed in the case, that the land was altogether woodland, and entirely unimproved. Could the testator suppose, that either of his devisees would have laid out their labor and money in improving land, which they held on so precarious a tenure as their own lives, and must be surrendered up with all its improvements, to the heir at law, at their deaths? By the law of England, the cutting down trees, in order to make improvements, would be waste, and a forfeiture of a life estate. Whether under the circumstances of this country, such an act would be de-

termined to be waste here, it is unnecessary to consider at present. It is sufficient for me, that the allotting different parts of one tract of woodland to his two devisees, was indicative of his expectation that they would improve them for the benefit of their families; which expectation he must have known to be vain, if he meant to give them a life estate only. He surely meant to give them a beneficial estate. An estate for life in such lands, would have been beneficial, so far only, as to make his devisees freeholders; which benefit would be overbalanced, by subjecting them to the payment of taxes for a property, which could yield no income. On the whole therefore, I am satisfied in my conscience, from the words of the will, connected with the nature of the property devised, that the testator meant to give an absolute estate in fee simple, to the objects of his bounty.

Yeates, J. I fully concur in the opinions delivered, and have seen no reason to change the sentiment I formed at the trial. I incline to think, that the intention of the testator, may be fairly and satisfactorily collected from all the words of the will taken together. Cowp. 238. Though the introductory words "touching such wordly estate," &c., (Cowp. 356. 5 Term. Rep. 13. 3 Wils. 418. Dallas 226,) will not give a fee, where the expressions of the devise import an estate for life only, yet they will aid the interpretation in a dubious case, and assist in showing the intention of the testator. Cowp. 307. 5 Term. Rep. 14. Dall. 226. Annaly 143. In Denn v. Gaskin, Cowp. 660, the words of Lord Mansfield, are—" If the testator had any way connected the introductory part " as to all my wordly estate," with the devise in question, it might have done; but the introduction is only this—" as to all such wordly estate, as God has endued me with," I give to A B, &c. so and so. Suppose he had given one-half his property by this will, the introduction would still have been proper. So if he had given the whole of his landed estate only, without disposing of the residue of his personalty, it would have been equally proper. He does not say in the introduction, that he means to dispose of all his wordly estate, but that with respect to it, he devises so and so."

In the principal case before us, this objection does not hold; because the testator here, unequivocally asserts his intentions of devising all his earthly property. The words are—"touching such wordly estate, wherewith it hath pleased Almighty God to bless me in this life, I give, demise (instead of devise) and dispose of the same, in the following manner and form;" and in the next immediate sentence follows the clause, containing the

devise in question. In Ibbetson v. Beckwith, Forrest. 157, 160, considerable stress is laid by Lord Talbot, on the introductory words of the will of Thomas Beckwith, which are nearly similar to the present. So in 3 Burr. 1625.

Perhaps, the observation which sometimes occurs, (Doug. 760, 761,) that introductory words like those in the present case, are mere matter of form and not material, and are almost of course, as the language of the scrivener, may go too far, to prove much. Unfortunately, most of the disputes respecting the construction of wills, owe their source to the phraseology of the penners of them.

To carry into effect the manifest intention of the testator, the word or in the devise to his brother Hugh M'Faddin, must be construed into the conjunctive and. There is no defect of authorities on this head. Amongst many other cases, may be cited Pollex. 645. 2 Stra. 1175. 1 Wils. 140. S. C. 3 Atky. 390. 3 Term Rep. 470. The devise then to his brother of 200 acres of the patented land being in fee simple, the devise to his nephew, Bernard Ferril, of the residuary 100 acres, will refer to and be connected with it.

In Cole v. Rawlinson, 1 Salk. 234, 2 Ld. Raym. 831, Holt's Rep. 744, 3 Danv. Abr. 201, words sufficient to carry a fee simple in the first part of the devise, were connected with a subsequent part, so as to make that an estate in fee which would otherwise only have been for life. Here a comma is placed between the devises, the words "and," "I leave," and "other," conjoining and connecting them together in one sentence. It is true, in the report of the case just cited in 2 Ld. Raym. 832, it is said, the estate would be otherwise, if the words "I give" had been repeated, for then they would have made it a new sentence, and disjoined it from the words of limitation. But I cannot see how the interposition of the words "I leave," in the will under consideration, can vary the construction on any solid principles. "Leave" is a term of relation, and implies a residue. Lord Chief Justice De Grey observes, in Wright's lessee v. Wright, 3 Wils. 419, that the devise of the Bell Tavern would not have carried a fee, but by connecting it with what went before. A devise of testator's lands at W. and all his interest in the estates of I. C., deceased, to L. A. for life, and after L. A's decease to E. S., charged with an annuity to I. T. for life, was held to give a remainder in fee to E. S. 5 Term Rep. 295; and Ld. Kenyon remarked, that he did not think it was forcing the expression "interest" too much, to apply it as well to W. as to the other estate. Will not the same remark hold here, as to the application of the words of limitation in the

preceding part of the devise of 200 acres to the brother, to the subsequent devise of the remaining 100 acres of the same tract to his nephew?

It is a common place observation, that cases in the books upon wills have no great weight, unless they are exactly in the very point. 2 Wils. 324. 3 Wils. 142. Though they may properly be argued from, if they establish general rules of construction, to discover the meaning of a will. 1 Burr. 233.

Whatever doubts, however, may arise on the mere penning of this will, every difficulty in my idea is removed on the ground chiefly relied on, by my brothers who have preceded me.

The intention of the testator may be discovered by circumstances. Ambl. 182. The circumstances and clauses of a will are to be united and taken together, in order to collect the intention. Per Wilmot, J. And circumstances twisted together will interpret a devise to be in fee, which on the face of it is only for life. 3 Burr. 1625. S. C. 1 Bl. Rep. 535. In the Bell Tavern case, one argument of the testator's intention was, that he could not design "so vain and useless an estate" to the devisee, as an estate for life after an estate tail. 1 Salk. 234. The value of property devised sometimes deserves consideration. Gouldsb. 99.

It is admitted, that the 300 acres of patented land on the waters of Warrior's Run, whereof the testator died seized, were of inferior quality, wholly woodland and unimproved at the time of his death. What then would be the effect, if his nephew, Bernard Ferril, should be supposed to take an estate merely for life in one third part thereof? Why was partition to be made by the executors? In what manner could an allotment of his separate share conduce to his advantage? He could not cultivate the land, for it was not arable; he could not cut down timber to enable himself to build a house, or to work the land; he could do no act to make the land useful or beneficial to himself. Indeed, if with the book cases on wills relative to lands very differently circumstanced from our own, we adopt the English decisions as to waste, (on which I avoid giving any opinion,) the cutting down trees would be considered as waste in the tenant for life, and operate as a forfeiture of his estate. A devise, from the cases cited by the Chief Justice, implies a bounty. But adopting the construction, that the "dear nephew" of the testator was entitled only to a life estate in 100 acres of woodland, it would be a strange instance of benevolence on the part of the uncle, to subject him necessarily to the payment of taxes, on account of his freehold interest! It is needless to add, that

independent of judicial determinations, it could not be the intention of the testator to lay a burthen on the devisee, under the pretext of a gift.

I will only add, in the words of Ld. Kenyon in 5 Term Rep. 294, " for near half a century, it has been the wish of the courts to give effect to the intention of the devisor, as far as they can. It has frequently been observed, that in almost every case, where the words of the devise have been so restrained as to give only an estate for life, the decision has been against what may be supposed to have been the private intention of the devisor. And Lord Mansfield often said, that it appeared to him, that persons in general who made their own wills, thought that the same words were sufficient to pass an estate of inheritance, that are used to convey a mere chattel interest."

Smith, J. It is admitted, that the land devised was unimproved at the testator's death, and of inferior quality. Now the law intends that the devise was for the benefit of the devisee, and not for his prejudice. 6 Co. 16. Where the devisee may by possibility sustain a loss, a fee passes without words of inheritance.

In the principal case, the devisee could not cut timber to build a cabin to shelter himself and his family ; he could not clear ground to plant anything for his sustenance on the land, without a certain expense. He might have died after expending his time, labor and money in cultivating the wilderness, before he had received any benefit. Was this then the intention of the testator ? Such intention cannot be collected from the words of this will, nor can it be inferred, consistently with the rule of law, that a benefit is intended and imported in every devise. The devisee was also liable to the payment of taxes. For although the land might be sold for the taxes, yet it seems to me, that the owner is also liable to an action for the taxes assessed on his land. Therefore, applying the words of the testator, to the subject matter of this devise, according to Cowp. 238, it is clear, that we are bound by the principles of law, which I have laid down, as well as by the justice and equity of the case, to declare, that Bernard Ferril took a fee simple in the 100 acres of woodland unimproved, devised to him by his uncle John M'Faddin.

I give no opinion, whether or not the words of this devise, had they been applied to cultivated land, which might have yielded benefit, without any expense to the devisee, would have given him an estate in fee, or for life. Nor will I say, that if the devisee was entitled to an estate for life only, in these one hundred acres of woodland, it would be waste, by which such estate would be forfeited, in such tenant for life to cut down timber for his necessary buildings, and render the land fit for

agriculture ; so that such cutting of timber did not injure the inheritance, and was conducted in such a manner as would be necessary to be done by an owner of the inheritance, for shelter and sustenance.

Judgment for the defendant.