1809.

Lessee
of
JAMES
*v.*
BETZ.

─────────────────

FRENCH and another *against* M'ILHENNY.

Sunbury,
Saturday,
July 8.

THIS was an appeal from the decision of YEATES J. at a Circuit Court for *Dauphin,* in *November* 1805.

It was an action of covenant, in which judgment was entered by consent for the plaintiff, subject to the opinion of the Court upon a case which stated that "*Seth Rodgers,* being "seised in his demesne as of fee, of and in a certain tract of "land, situate in *West Hanover* township, *Dauphin* county, "made his last will and testament in writing, dated *October* "3, 1757, in *hæc verba;* and as for such worldly estate, "wherewith it has pleased God to bless me in this life, I

The testator, "as for such "worldly estate "wherewith it "had pleased "God to bless "him," bequeathed the same in part as follows: "To "his wife, one "half of his "*plantation,* "during *her* "*natural life;* "to his nephew

"Seth two thirds of his *plantation,* excepting what was above to his wife already willed; "also to his nephew Robert one third of his *plantation,* excepting what was above willed "to his wife." *Held* that the nephews took a *fee simple* in the plantation, subject to the life estate of the wife in a moiety.

" give, dispose, and bequeath the same in the following " manner and form; *First*, to *Catherine Rodgers*, my beloved " wife, I bequeath the one half of all my moveables, as also " her bed, and chest, and clothing, and *the one half of my* " *plantation during her natural life: Also*, to my brother " *Hugh Rodgers* the one half of my body clothes, and five " pounds in money: *Also*, to my brother *George Rodgers* the " other half of my body clothes, and five pounds in money: " *Also*, to my nephew *Robert Rodgers*, son to said *Hugh* " *Rodgers*, twenty five pounds, &c. &c. *Also*, to my nephew " *Seth Rodgers, two thirds of my plantation, excepting what is* " *above to my wife already willed. Also*, to my nephew *Ro-* " *bert* aforesaid, *one third of my plantation, excepting also* " *what is above willed to my wife*." Then followed some legacies of no importance. The question submitted to the consideration of the Court was, whether an estate in fee simple in the whole of the said tract of land, vested in the said *Seth* and *Robert*, after the death of the testator's widow. If it did, then judgment for the plaintiff to stand; if it did not, that judgment to be set aside, and judgment to be entered for the defendant, with liberty to either party to appeal.

The case was argued below by the plaintiff's counsel alone, when his Honour decided in favour of the plaintiff, and the defendant appealed. It was argued here at last *July* term by *Laird* for the plaintiffs, and by *Duncan* for the defendant.

*For the defendant.* 1. *Seth* and *Robert Rodgers* took but an estate for *life*. 2. That estate is confined to one half the plantation, the other half to the wife being excepted.

1. The devisees took but an estate for life, because it is an established rule of law that express words of inheritance, or words tantamount, are necessary to pass an estate of inheritance; and that the heir at law is not to be disinherited by a doubtful construction. The decisions upon this head are without end; and they enforce the principle without a single exception, even in cases where privately there could not be a doubt, that the intention of the testator was thereby defeated. In *Right* v. *Sidebotham* (a), where this rule is laid down, it appears that the words *tantamount* to words of inheritance,

(a) *Doug.* 730.

are such only as indicate the whole interest of the testator, and not such as are descriptive of local situation, or the kind of property. " All my lands in *B.*," " all my farms," are descriptive of situation and kind; " my estate," " all my " interest," on the other hand, are descriptive of interest: the latter will pass a fee, the former but an estate for life. Now, there is no difference either in legal or vulgar acceptation between " farm" and " plantation," nor has it ever been held, that either term, any more than that of " house," was descriptive of interest. It is true, that sometimes the context of the will is allowed to extend a devise beyond an estate for life; but there is nothing in this will that can properly have that influence. The first clause, " as to all my worldly " estate," &c. certainly has no such effect. In *Right* v. *Sidebotham,* in *Denn* v. *Gaskin* (*a*), in *Roe* v. *Bolton* (*b*), and in many other cases, where that clause is found, the devisee took but an estate for life. They are words of course in wills, and are never meant to relate to the quantity of interest given in the thing devised. There is also a devise to the wife for *life,* which may be said to indicate an intention to give a fee where the same limit is not affixed to the estate. But this was precisely the case in *Roe* v. *Bolton,* which, in several particulars, is almost in point to the present. There the will contained the introductory words, " as touching " such worldly estate," &c. The testator then gave all his real and personal estate to his wife for *life,* and afterwards made the devise in question. " *Item,* I give unto my son " *Paul Cardale* all that my land, lying and being in the pa- " rish of *Dudley,* in the county of *Worcester,* near unto a " certain place called *Finsley Hill,* into three parts divided, " at or immediately after my wife's decease." There was also a legacy of five shillings to the heir at law; but *Paul Cardale* took only an estate for life. In fact, the cases in which a fee has passed without words of perpetuity, are either where a word has been used indicating the entire interest, as " estate," or where the devisee has been directed to pay a rent charge, or other solid sum out of the property devised. *Denn* v. *Mellor* (*c*). The Court may conjecture that a fee was intended by the testator, " but *quod voluit non*

(*a*) *Cowp.* 657.     (*b*) *Doug.* 732.     (*c*) 5 *D. & E.* 562

1809.
FRENCH
*v.*
M'ILHENNY.

" *dixit;*" and they are bound to consider the series of authorities which reject these private conjectures, and set up permanent rules of construction in their place, as the law of the land. The anonymous case in 3 *Dall.* 477, turns upon the peculiar nature of an improvement under warrant in 1745. The testator, by a will of that date, devised the improvement whereon he lived to his son *James;* and it was held to pass a fee. But it is well known that in 1745 such an improvement was considered, and taken in execution, as personal property; whereas the testator in this case held under a patent, which has always been deemed an absolute legal estate in fee simple.

2. The devise passes only two thirds, and one third, of the moiety not devised to the wife. It is not a devise of the whole, subject to a prior devise of part; but it is a devise excepting a part which had been previously devised. The moiety therefore went to the heir at law upon the wife's death, and judgment should be entered for the defendant.

*For the plaintiffs.* The intention of the testator is to be gathered from the whole will; and although each of the peculiarities of this will may have separately occurred in cases where the devisee has taken but an estate for life, yet together they must be considered as tantamount to words of inheritance. The testator meant to devise every thing; when he intended to give but an estate for life, he did it in express terms; and when he made an exception out of the whole plantation devised to the nephews, it was an exception of the wife's life in a moiety, and nothing more. The first circumstance has always been allowed great weight in the construction of the quantity of interest subsequently devised; for after such a beginning the testator must intend to dispose of the fee. The next circumstance shews, that in the case of the nephews, he did intend a fee, because had he meant a life estate he would have copied the devise to the wife. And the third shews, that as one exception to the extent of their devise is provided for, both as to quantity of land, and duration of estate, namely, a moiety for the wife's life, no other exception in either particular was intended. Altogether they establish an intention to give a fee. The case of *Fletcher* v. *Smiton* (a), shews the effect of using restrictive words in a

(a) 2 *D. & E.* 656.

former part of the will, and dropping them afterwards. *Grose*  *J.* says, " where the devisor intended to confine the operation " of the word " *estates*," he added " *for life;*" but in the latter " clause there are no words of restraint added." So here, where he intended to confine the operation of the word " plantation," which he thought would pass every thing, and which is fully as descriptive of interest as " *estates*," he added " *for life;*" but in the devise to the nephews there are no words of restraint. In *Loveacres* v. *Blight* (a), the Court say, although the introductory clause is not *alone* sufficient, yet it is a strong circumstance connected with other words to explain the testator's intention of enlarging a particular estate, or of passing a fee where he has used no words of limitation; and by the aid of that, and some other circumstances of no great weight, they held a fee to pass by a devise of all his lands to his two sons, freely to be enjoyed and possessed alike. In fact, as Lord *Mansfield* says in that case, the question is always a question of construction, and depends upon observations naturally arising out of the will itself. Now, can there be a doubt, if we resort to these observations, that the testator intended a fee? In universal understanding the plantation is the *estate*, it is the whole interest; and although, by arbitrary decisions heretofore, a devise of the plantation may, standing by itself, pass but a life estate, yet there is no decision that, with the other circumstances of this will, it would not pass a fee. The case is stronger than *Tanner* v. *Price* (b), *Barry* v. *Edgeworth* (c), or *Lambert's Lessee* v. *Pain* (d), in each of which the devise passed a fee. In *Right* v. *Sidebotham*, the testator had before given the same devisee a fee in other lands by technical words, which he omitted in the devise in question; and in *Denn* v. *Mellor*, both the introductory clause, and the express devise for life were wanting.

2. About the proportion devised there can be little doubt. It is a devise of the plantation, that is the fee, excepting out of it a life estate in a moiety. Half of the land for a life in being, is excepted out of the whole land in fee simple; which, in other words, is an immediate devise of a

1809.

FRENCH  *v.*  M'ILHENNY.

(a) *Cowp.* 352.            (c) 2 *P. Wms.* 523.
(b) 3 *P. Wms.* 295.        (d) 3 *Cranch* 97.

moiety in fee, and the reversion of the other moiety after the wife's death.

*Cur. adv. vult.*

Upon this day the judges delivered their opinions.

TILGHMAN C. J. This case arises on the will of *Seth Rodgers*, made the 3d *October* 1757; and the question is, whether the testator's nephews took an estate in fee simple in the land devised to them.

At the time of the argument of this cause in the Circuit Court of *Dauphin* county, it was supposed that the testator held the land only by *warrant* and survey, and it is probable that the court relied on that circumstance. Titles of this kind were formerly considered as *personal* estate; and accordingly it was decided in an anonymous case reported in 3 *Dall.* 477, that a devise to a man's son of the " improvement whereon the testator lived," without other words, passed a fee simple, because the land was held by *warrant* only. According to the most accurate account I have been able to obtain, it was about the year 1758, that these equitable titles began first to be considered as *real* estate. It is now however ascertained that the land in question was held by patent by *Seth Rodgers* at the time he made his will. It is therefore the common case of a devise by a person seised of the legal estate in fee simple.

The testator begins his will with the usual introductory clause, " as for such worldly estate wherewith it has pleased " God to bless me in this life, I give, dispose and bequeath " the same in the following manner." He then gives his wife one half of his plantation during her natural life; and then, after giving several legacies, comes the devise to his nephews in the following words. " Also to my nephew *Seth* " *Rodgers* two thirds of my plantation, excepting what is " above to my wife already willed. Also to my nephew " *Robert* aforesaid, one third of my plantation, excepting also " what is above willed to my wife." After this follow legacies of money to several persons which it appears by the expressions of the will, the testator intended to include the whole of his personal estate.

If I was at liberty to indulge my own conjectures, I should think it probable that the testator intended to give a fee

1809.

FRENCH
v.
M'ILHENNY.

simple to his nephews. But as this is only a conjecture, I know not how to get over a principle which seems well established, viz. that the inheritance shall not be taken from the heir, unless the devise contains either proper words to create a fee simple, (to the devisee and his heirs) or words which have been construed as tantamount, as to the devisee *for ever*, or all his *estate* in the land to the devisee; or unless in some other part of the will an intent is manifested inconsistent with a less estate than a fee simple, as if the devisee is directed to pay a sum of money to a third person. Now there are no words of that kind in this will. It is a simple devise of a *plantation*, excepting what had been given to the wife, which as much as to say, subject to the devise of one half of the said plantation before made to the wife for life.

There are indeed the introductory words, shewing an intention to dispose of all the estate; but although such words have been relied on, in conjunction with others, yet they have not of themselves the force to give a fee simple. The last case adjudged in *England*, which is an authority upon this subject, is *Mudge's Lessee* v. *Blight*, in the year 1775. *Cowp.* 352. Lord *Mansfield* in delivering his opinion, declares, that where there are no words of limitation, the devisee can take only for life, because the principle is fully settled, and no conjecture of a private imagination can shake a rule of law. If the intent is doubtful, the rule must take place; so must it, if the Court cannot find words to carry a fee, though they have no doubt of the intent. Introductory words alone, will not do. The opinion of Lord *Mansfield* is entitled to great weight, because the liberality of his mind in general, and his strong inclination to carry the testator's intent into effect without regard to form, is well known. Subsequent decisions in *England*, though not to be regarded as authority, shew that the opinion just recited is still considered as law there. In *Mitchell's Lessee* v. *Sidebotham, Doug*. 730. the testator devised " all his lands, tenements, and houses in the parish of *C.;*" the will had the introductory words sometimes relied on, and a devise of one shilling to the heir at law, which was certainly a strong circumstance to shew that it was intended the heir should have nothing but a shilling; but it was determined that the devisee took

only an estate for life. In the *Lessee of Gaskin* v. *Gaskin*, *Cowp.* 657, there was the same decision, although there were the introductory words, a devise of one shilling to the heir, and a devise of all the residue of the *personal* estate. In this case, Justice *Aston* cited *Wright, Lessee of Shaw* v. *Russel*, determined in the exchequer in 1761. After the introductory words, there was a devise of a *house* to testator's grandson A. and after his decease to his two sons B. and C., and a devise of one shilling to the husband of the heir at law; held, that B. and C. took only for life. In *Moor's Lessee* v. *Mellor*, 2 *Bos. & Pul.* 247. and 5 *D. & E.* 558, the same principle was decided by the court of King's Bench, and affirmed on a writ of error in the house of lords. I think the principle of not disinheriting the *heir* without sufficient words, ought if possible to be more strictly observed here than in *England;* because there the *eldest* son is the heir, but here the law is more equitable, and all the children together are considered as heirs.

The case of *Lambert's Lessee* v. *Paine*, 3 *Cranch* 97. decided by the Supreme Court of the *United States*, was cited on the argument of this case. It was a devise of " all the estate " called *Marrowbone* in the county of *Henry* containing by " estimation 2500 acres." Three judges, against Judge *Washington*, held that the devisee took a fee. This opinion was founded solely on the import of the word *estate*, which has been held to refer not only to the local situation of the land, but to the *interest* which the testator had in it. The word *plantation* never was construed in that sense; and it is worthy of remark that Judge *Patterson*, in giving his opinion in *Lambert* v. *Paine*, thus expresses himself: " some expres- " sions in a will, as I give my farm, my *plantation*, my house, " my land, do of themselves contain no more than a descrip- " tion of the *thing*, and carry only an estate for life." On the same principle (the import of the word *estate*) was decided the case of *Wilson* v. *Wilson*, before Judge *Yeates* at the Circuit Court of *Dauphin* county, *September* 1805. The testator devised " all his real estate" to his five nephews, each share and share alike.

In considering the case now before us, I confess it was my wish to find words which might authorize the opinion

that the testator's nephews *Seth* and *Robert Rodgers* took an estate in fee; but I can find no words which can be so construed, without breaking down an established principle, and thus opening a door for uncertainty and confusion. I am therefore of opinion that they took no more than an estate for life in the land devised to them, and that the judgment of the Circuit Court be reversed.

1809.

FRENCH
*v.*
M'ILHENNY.

BRACKENRIDGE J. stated the material devises, and then proceeded as follows:

Were we at liberty to construe the above words as we would construe the words of any other writing, no doubt could be entertained but that the testator by giving the plantation, or giving any part of it, intended that gift to be to the *extent of the interest he had in it.* Because such is the meaning and acceptation of the terms, in conversation and in writing. It would be so understood by the people. But it will be said we are not at liberty to construe a will, according to the common meaning of the words; but according to the technical acceptation of the terms.

It is a maxim, that the intention of the testator shall prevail; yet that must be consistent not only with the rules of law as to the extent of his gift, but with the rules of construction as to what he does give. This restraint upon alienation by devise, was unknown to the *Roman* law, and had no place in our law with regard to devises of goods and chattels. It would seem to have come from the strictness of the common law conveyance, the courts going a certain length in applying the rules of construction in one case to the other; not so far as to say " that words of inheritance shall be ne- " cessary to give a fee, or words of procreation an estate tail," 2 *Black. Com.* 381.; yet so far as to say, that the popular acceptation of a term shall give way to technical construction, however inconsistent this with what is laid down by the same writer, in the same place, " that a devise be favourably expounded to pursue if possible the will of the devisor, who for want of advice or learning may have omitted the proper or legal phrases."

In *Perrin* v. *Blake,* Lord *Mansfield* observes, " that as the " law allows a free communication of intention to the testa- " tor, it would be a strange law to say, now you have com-

FRENCH
*v.*
M'ILHENNY.

1809.

" municated that intention so as every body understands " what you mean, yet because you have not used a certain " expression of art, we will cross your intention, and give " your will a different construction, though what you mean " to have done is perfectly legal; the only reason for contra- " vening you, is because you have not expressed yourself as " a lawyer." Yet on a writ of error in the exchequer chamber the contrary doctrine prevailed; and it was held to be the principle, " that the testator shall be permitted to fulfil " his intention, so far as such construction is consistent with " the established rules of construction." *Collec. Jur.* 229.

The inconsistency of this principle with that of " serving " the intention" was such, that from an early period we find the courts giving a meaning to *terms* in support of the intention, which they technically had not before that time; as that the word *estate* shall be construed to give a fee; " that " it shall be understood to comprehend, not only the thing, " but the interest in it." 2 *Peere Will.* 524. So in 3 *Peere Will.* 295, where *temporal* estate is said to mean *worldly* estate, and the *rest of my estate*, temporal estate, which without the word heirs would have sufficed to pass a fee. And in 1 *Wilson* 333, after the introductory words, " all my temporal estate," a devise of " all the rest of my goods and " chattels, real and personal, moveable and immoveable, as " houses, gardens, tenements," without making use of the word estate, or any words of limitation, was held to give a fee.

In *Brown* v. *Taylor*, 1 *Burrows* 270, the word *legacy* by relation is construed to carry land. Lord *Mansfield* says " this " is plainly a will of the man's own drawing. The explana- " tion of the word *legacy*, must be governed by the inten- " tion of the testator; and to this purpose some stress may " be laid upon this introduction of the professed disposition " of all his ' worldly estate.' Common people do not make " a distinction between money and land."

Yet in the case of *Mitchell* v. *Sidebotham, Doug.* 730, this freedom of thinking would seem to have been restrained somewhat; for in this case, which was, " I give and bequeath " to *A.* all my lands at *C,*" it was held that an estate for life only was given, notwithstanding the introductory words, " for those worldly goods and estate with which it has

" pleased God to bless me." " I verily believe," says Lord
Mansfield, " that in almost every case, where by law a general
" devise of lands is reduced to an estate for life, the intent of
" the testator is thwarted; for ordinary people do not distin-
" guish between real and personal property. The rule of law
" however, is established and certain, that express words of
" limitation, or words tantamount, are necessary to pass an es-
" tate of inheritance. ' All my estate' or ' all my interest' will
" do: but ' all my lands lying in such a place,' is not sufficient.
" Such words are considered descriptive merely of the local
" situation, and only carry an estate for life. Nor are words
" tending to disinherit the heir at law sufficient to prevent his
" taking, unless the estate is given to somebody else." In
Hogan v. Jackson, Cowp. 307, he again admits this rule of
construction, which by analogy to the law of conveyance
would seem to have been adopted to some extent in the con-
struction of devises; but he shews an astutia in giving a techni-
cal meaning to popular language in order to support the in-
tention. It may be worth while to give his words at some
length. " The law of England formerly admitted of no tes-
" tamentary dispositions of real property. This restriction
" took place on the introduction of military tenures, and was
" a branch of the feodal doctrine of non-alienation without
" the consent of the Lord. But when the rigor of the re-
" striction became by degrees to be relaxed, and tenants were
" permitted to make dispositions by testament, a devise of
" land operated as an appointment to uses, in nature of a
" legal conveyance. As such, the courts of law in the con-
" struction of them, held, that a devise affecting lands could
" operate only on such real estates as the testator had at the
" time of executing and publishing his will, and not upon
" any after purchased or acquired lands; because there
" could be no legal conveyance at common law of what a
" man should acquire in future. Another distinction, found-
" ed upon the notion that a will affecting lands is merely a
" species of conveyance, and derived from the same source,
" is this. The law of England, in the conveyance of real
" estates, requires words of limitation in the donation or
" grant, to the creation of a fee. Without the word heirs,
" general or special, no man can create a fee at common law
" by conveyance. When wills therefore were introduced,

1809.

FRENCH
*v.*
M'ILHENNY.

"and devises of real property began to prevail, being con-
"sidered as a species of conveyance, they were to be govern-
"ed by the same rule. Therefore, by analogy to that rule,
"in the construction of devises, if there be no words of
"limitation added, nor words of perpetuity annexed, which
"have been held tantamount, so as to denote the intention of
"the testator to convey the inheritance to the devisee, he
"can only take an estate for life. For instance, if a testator
"by his will says, I give my lands, or such and such lands
"to *A.*; if no words of limitation are added, *A.* has only
"an estate for life. Generally speaking, no common person
"has the smallest idea of any difference between giving a
"person a horse and a quantity of land. Common sense
"alone could never teach a man the difference; but the dis-
"tinction now clearly established, is this, if the words of the
"testator denote only a *description* of the *specific estate* or
"*lands* devised, in that case, if no words of limitation are
"added, the devisee has only an estate for *life*. But if the
"words denote the *quantum* of *interest* or property that the
"testator has in the lands devised, there, the *whole* extent
"of such his *interest* passes by his gift to the devisee. The
"question therefore, is always a question of construction,
"upon the words and terms used by the testator. It is now
"clearly settled, that the words ' *all his estate*' will pass
"*every thing* a man has: but if the word ' all' is coupled
"with the word ' *personal*' or a *local description*, there, the
"gift will pass only personalty, or the specific estate parti-
"cularly described."

In *Fletcher* v. *Smiton*, 2 *Term Rep.* 656. it was deter-
mined that the word *estates* in a will, carries a fee, unless
coupled with other words which shew a different intention.
Lord *Kenyon* says, " there are cases in which *nice distinc-
"tions* have been taken between a devise of an estate *at* such
"a place, and a devise of an estate *in* a particular place; and
"Lord *Hardwicke* alluded to it in the case cited from *Vesey;*
"but he added, that there is no case in which it was held
"that a fee passed by the devise of an *estate*, if the testator
"added to it, ' in the occupation of any particular tenant.'
"And I admit that the word ' estate' may be so coupled
"with other words as to explain the general sense in which
"it would otherwise be taken, and to confine it to mean

" *farms* and *tenements.* The word ' estates' has been held
" equivalent to ' estate,' unless other words be added to ex-
" press a different intention. In the case of *Tilley* v. *Simp-*
" *son*, in the Court of Chancery, *E.* 1746, Lord *Hardwicke*
" said, it would be productive of bad consequences to con-
" fine the devise to a chattel interest, unless there were other
" words to shew that it was so intended to be restrained."
*Buller* J.—" This is a question merely on the intention of
" the testator; and I think it is apparent, on reading the
" whole, that it was his intention that every thing he had,
" should pass by it." *Grose* J.—" Where the devisor inten-
" ded to confine the operation of the word ' estates,' he ad-
" ded, ' for life:' but in the latter clause there are no words
" of restraint added."

In a note to this case, we find a reference to that of *Tilley*
v. *Simpson* in Chancery, *Easter* 1746. The testator, after
declaring that he intended to dispose of all his worldly estate,
and making several devises to different persons, gave and
bequeathed all the *rest and residue* of his money, goods, chat-
tels and estate whatsoever to his nephew *A. B.* The question
was, whether a beneficial interest in a real estate not before
disposed of, would pass to the nephew by this devise. Lord
*Hardwicke* chancellor, was of opinion that it would. He
said, " where the court have restrained the word *estate* to
" carry personal estate only, hath been where it hath ap-
" peared that it was the intention of the testator it should be
" so understood."

Yet in *Moor* v. *Mellor*, 5 *T. R.* 559, where the devise was
" all the rest of my lands and tenements," it was determined
that but an estate for life passed. Lord *Kenyon* said, " had
" there not been such a current of authorities as we find
" in the books, since the passing of the statute of wills, to
" further (as it has been called) the intention of the testator,
" perhaps it would have been better if the same strict words
" had been required in testamentary dispositions of land as
" in those by deed; because then the language of passing
" estates would have been so familiar that few questions
" would have arisen on wills. For it has been often observed,
" that few questions arise on the construction of deeds, when
" compared to those which daily arise on wills. But we are
" bound to consider the series of authorities on this subject

1809.

FRENCH
v.
M'ILHENNY.

" as the law of the land; and it would be extremely danger-
" ous, now, to remove those landmarks of real property, on
" which mankind have acted for such a length of time. In
" many of the cases that have been litigated, and in which it
" has been decided that the first devisee was only entitled
" to a life estate, one cannot but suspect, privately speaking,
" that it was the intention of the devisor to give the absolute
" property to the first taker; and Lord *Mansfield* used to
" observe that the common class of men imagined that they
" could give a fee simple by the same words that are suffi-
" cient to give a piece of plate. But the contrary of such a
" supposition has now been decided by so many authorities,
" that it would be dangerous to shake them; and in deciding
" on the construction of wills, we must not indulge in con-
" jectures or wishes, but determine on the words used ac-
" cording to those authorities. Where the word ' estate' has
" occurred, that word has been held *ex vi termini* to pass a
" fee. The courts indeed have gone as far as they could, to
" give the absolute interest to the first devisee: but there are
" certain limits which they have put upon their construction
" of wills, and we must take care not to transgress them.
" Privately speaking, I think the devisor meant to give an
" estate in fee to his wife, but we are compelled by the au-
" thorities to say that she only took an estate for life."
*Grose* J.—" In the construction of wills, we must be guided
" by those rules which we find established in former cases.
" And one rule is clear, that the heir at law is not to be
" disinherited, unless the devisor's intention to disinherit him
" can be collected from the words of the will. What is a
" sufficient proof of that intention, is not indeed accurately
" defined, as applicable to every case that may arise: but
" there are some rules laid down upon this subject, to which
" we are bound to adhere; and one of them is, that if a man
" give his house to *A.* without other words, it is only a de-
" vise for life, whatever may be our conjecture of the devi-
" sor's intention. On the authority of the cases alluded to, I
" am compelled to say that in this case the widow took only
" an estate for life."

In *Palmer* v. *Richards*, 3 *T. R.* 356, Lord *Kenyon* says,
—" the court will not anxiously seek for words to disinherit
" the heir at law, though they will endeavour to give effect
" to the intention of the testator. No person who reads this

1809.

FRENCH
*v.*
M'ILHENNY.

" will, except a lawyer, can have any doubt on the meaning " of it." *Buller* J.—" There is hardly any case of this sort, " where only an estate for life is held to pass, but that it " counteracts the testator's intention. For where a testator " uses general words, he means to dispose of every thing he " has. But such is the rule of law, that unless some words " are used which the law considers sufficient to carry a fee, " the devisee can only take an estate for life, though indeed " slight expressions are sufficient to pass the inheritance, " where the Court thinks that such is the devisor's intention. " No technical words are necessary in a will to give a fee; " but if any words are inserted to effectuate which it is " necessary that a fee should pass, that is sufficient."

In *Childwife* v. *Wright and others*, 8 *T. R.* 67, there was a devise of all estate, lands, &c. lying and being, &c. Lord *Kenyon* observes that " it has been frequently lamen- " ted that the same technical words were not required in " wills as in deeds; because had such a rule been adopted, " few questions would have arisen on the construction of " wills. Certain rules have been adopted by which the real " property of this country has been governed for ages, and " it would be *too* much for us now to overthrow them. I am " therefore of opinion that *J. W.* only took an estate for " life." And *Ashhurst* J. remarks that " it is better for the " public that the intention of one individual should be de- " feated, than a series of decisions on which the property of " this country depends should be shaken. *Stare decisis* is a " maxim in our law. Where there is a general devise of lands " without any words of inheritance, the law says the devisee " shall only take an estate for life, and such is the present " case."

I would ask whether it has not been as much lamented, or at least as lamentable, that the maxim of *debet intentioni servire* had ever been broken in upon in the case of wills, by introducing the idea of a technical construction; and whether that has not been the cause of the uncertainty. That the compound construction of the *common acceptation of terms, and the technical meaning*, has been the cause of uncertainty, no one can doubt. In 2 *Peere Will.* 741, in the argument of sir *Joseph Jekyl* as master of the rolls, we have these observations: " I am sensible there is a diversity of opinions.

" among the learned judges of the present time, whether the " legal operation of words in a will, or the intent of the tes- " tator, should prevail? For my part, I shall always contend " for the intention where it is plain, and I think the strongest " authorities are on that side; for if the intention is sometimes " to govern, as it is admitted it must, and not always give " way to the legal construction, and yet at other times shall " not govern, there will then be no rule to judge by, nor will " any lawyer know how to advise his client; a mischief which " judges ought to prevent."

The same question arising from the same will, where the same plaintiff was defendant, was argued and decided in the Court of Common Pleas, seven years afterwards, and is reported 1 *Bos. & Pul. N. S.* 342, where sir *James Mansfield* expresses himself thus: " This case has been long de- " pending, not so much on account of any doubts entertained " by my brothers, as by myself, the rest of the Court being " of opinion that the defendant is entitled to judgment; " and though I now defer to the opinion of my brothers and " the judges of the Court of King's Bench, yet I must " declare that if it had fallen to my lot only to decide the " case, I should have decided it in favour of the lessor " of the plaintiff. Though I am bound therefore to say " that this is still my opinion, yet I entertain it with great " doubts of its solidity. Many cases have been cited, on " which it would be wasting time to observe. My brother " *Heath*, indeed, has furnished me with a case which is " stronger than any, but to which I never could have agreed. " In almost all the cases where questions of this sort have " arisen, it has been next to impossible, out of a court of " justice, to doubt of the testator's intention to give the thing " absolutely to the devisee. When a man gives a house, he " supposes that he gives it in the same manner as he gives a " personal chattel. On the other hand, it may be said, that " as the common sense of mankind proves the intention to " give an absolute estate, particular circumstances indicating " such intention cannot prove it more strongly than the " general devise; and that nothing therefore ought to be " relied upon but express words in the will. And this cer- " tainly is the safest side; for it cannot be denied that where " wills are interpreted on the force of particular circum-

" stances, indicating particular intentions, decisions so " founded are more likely to lead to litigation than those " which are founded upon adherence to the general rule, " that unless there be express words of limitation, or some- " thing which renders it necessary to give an estate of inhe- " ritance, the heir at law shall not be disinherited. Whenever " a case is decided on circumstances, others, who are to " judge afterwards, may receive a different impression from " the same case; whereas the adherence to a general rule is " more calculated to avoid uncertainty. I am bound to think " that the opinion of my brothers is founded on more solid " grounds than mine."

The weight of seven judges against him, the four judges of the Court of King's Bench, in the case before determined, and his three associates in the Court of Common Pleas, in the present case, led him to concede this; but I think the time not far distant, when even in those courts the rule will be otherwise. The sense which would strike the common mind generally, will be the test of the meaning.

In *Burnsal* v. *Davy*, 1 *Bos. & Pul.* Chief Justice *Eyre*, says, " Technical rules are not to be relied on in explaining " the intention of testators, and yet *cases of intention are* " *much embarrassed by authorities.*" But in *Moor* v. *Mellor*, 2 *Bos. & Pul.* 250, *M‘Donald*, Chief Baron, who delivered the opinion of the judges in *camera procerum*, lays it down, " that in order to preserve uniformity, and consequently " security, in administering the law of real property devised " by will, it is necessary that the sense which has been put " upon particular modes of expression should be adhered to."

In *Braidon* v. *Page*, in a note to 1 *Bos. & Pul.* 261, Lord *Mansfield* is reported to have said, " that there is hardly an " instance, where the words of a devise are restrained to a " life estate only, in which the intention of the testator is " not contravened; for common men are ignorant of the " difference between land and money. This being so, the " courts have been astute to find out if possible from other " parts of the will, the intention of the testator." And in the case to which this is a note, Chief Justice *Eyre* says, " I " think that we do not want the authority of cases at this " time of day, to establish the rule of law, that in the con- " struction of a will, whether the words used be technical or

" not technical, or even of vulgar and common parlance, the " court is to put that sense upon them, in which, on a fair " consideration of the whole *context*, they collect that the " testator intended to use them."

But to come nearer home, I extract the note of Judge *Tucker* to his 2 *Black. Com.* where he quotes *Pendleton* President, as follows: " that the intention of the testator is " to give the rule of construction, is declared by all the " judges both ancient and modern; but the judges, after " laying down the *true* rule built upon *intention*, unfortu- " nately admitted that if there were no words of limitation, " the common law rule must prevail; by which they tied a " gordian knot, which they have struggled to untie. *It would* " *have been better to have cut it at once.*"

What has been the doctrine on this head in the state of *Pennsylvania?* From the case in 3 *Dall.* 477, the devise was to " my son *James* the improvement whereon I now live." The premises were held by warrant; and the only question was, whether an estate for life or in fee vested in the testa-tor's son *James* by the devise. The court decided that the devisee took an estate in fee. This decision is under the year 1798, and in the Supreme Court. The will under which the lessor of the plaintiff claimed, is stated to be of the 8th of *October* 1745. Whether this decision was on the ground of considering the subject of the devise real property, or but a chattel interest, does not appear; though how it could be considered otherwise than as real estate, though with but an equitable title, I do not know. A bare *improvement* might have been considered as a chattel interest at a certain period, and I believe was by some, so that an inquisition was not necessary to condemn; but I do not know that any idea of this kind prevailed, where there was the inception of an office right. Be that as it may, *I am prepared to go the whole length of declaring independence of the decisions of the* English *courts, subjecting the construction of a will to technical rules.*

In this case however it may not be necessary, if the tech-nical construction will support the intention of the testator. There is left to the widow one half of the plantation *during her natural life;* to *Seth* two thirds of the plantation, except what is above to the wife already willed; and to *Robert* one third, &c. This must be a *remainder* of at least one half of

the plantation. Will not such a devise in remainder carry a fee? According to *Wallace* v. *Jackson, Cowper* 290, on a devise of lands to the mother during her natural life, and after legacies and annuities to the heir at law and to several relations, a devise to the mother of " all the remainder and " residue of all his *effects* real and personal," the mother took a fee simple by this residuary clause, in all the testator's fee simple estates. It must be admitted there was a technical term in this case, *effects*, which had been holden to be equivalent to estate, and to carry a fee; and also the words " remainder" and " residue;" and the stress of the decision in favour of the widow is laid upon these words.

But it seems to be a rule, of even technical construction, that if it can be collected from the words of the will, what were the ideas of the testator with regard to the effect of the terms used by him, that sense shall prevail.

In *Bowes* v. *Blacket, Cowp.* 239, Lord *Mansfield* agrees that " if from the whole of the will taken together, and ap- " plied to the subject matter of the devise, it can be found " that the testator's intention was to give a fee, it has been " very properly and very truly admitted at the bar, that it " ought to be so construed as to give effect to such inten- " tion." Now it is clear from the limitation tò the widow *during her natural life*, that he had conceived that but for this, the giving one half of the plantation would have carried a fee of that half. Independent therefore of the ordinary use of language, there is here evidence, *ex visceribus testamenti*, of the extent and meaning affixed in the mind of the testator to the devise of a plantation. It follows, by necessary implication from the qualification, that he thought, that by giving a plantation, without saying more, he would give a fee. It may seem, therefore, that we have at least some countenance from the rules of technical construction, and that we are not altogether without legal help in eliciting the testator's intention in this case. At a dead lift therefore, I think this may do: and that without infringing on the doctrine of the *cabala* in substance, we may say that, by the word *plantation* a fee under this will may pass, since the *expressio unius*, natural life, *est inclusio alterius*, which must be something more; and if any thing more, it cannot be less than a fee.

1809.

FRENCH
*v.*
M'ILHENNY.

I should be much better satisfied to go back at once, and begin where the courts have gone wrong, and to take the meaning of a will as I would that of any other writing. It will not bear examination to say, that this will lead to controversy; or if it did, how does it reconcile contradiction, *to say that intention shall govern, and yet set it aside.* It is inconsistent with the nature of the case to suppose, that a man *in extremis* can have the benefit of legal assistance, or that in ordinary cases, where he does not call for it, he ever thinks of legal terms or the want of them; he uses the words of common language, and ought to be so understood. Courts will differ about the meaning and effect of a legal term, and there is a much greater chance of a concurrence of opinion on the popular import of a word.

I am confident there will be a beginning some time of emancipation from this affectation of mystery, in a science which has its foundation in reason and common sense.

As to estates having passed under this or that will, and the decisions thereupon, let what has taken place stand; why should it affect wills yet to be construed, or yet to be made? And this is the only consideration that can stand in the way, or can constitute an impediment.

In the case before us the particular estate hewn out of the whole, *the one half of the plantation to the wife during her natural life,* and the devise of two thirds to *Seth,* and one third to *Robert, excepting what was devised to the wife,* implies a devise *of all but what is excepted,* and this is a fee simple in the whole after the expiration of the life estate. On the breaking of this case, and on the argument, I was inclined to think that on the decisions of the *English* courts, there was but a life estate by the words of the devise; but of the intention I had no doubt; and with a willingness to support the intention, I may perhaps have gone farther than the strictness of technical construction in the *English* courts may warrant. But upon the whole, in support of the intention in this case, I will venture to give judgment for the plaintiff.

The Court being thus divided in opinion, Mr. *Duncan* for the defendant observed, that judgment could not be entered for the plaintiffs unless a majority of the court concurred therein; the judgment in the Circuit Court having been

entered by consent, without prejudice, and without even hearing an argument on the part of the defendant.

YEATES J. thereupon said, that he thought the case had come up by appeal from the opinion he had delivered, though the defendant's counsel had not argued the case. But if any misunderstanding prevailed on that point, he had no hesitation in declaring that he adhered to the opinion he had formerly given. The introductory words in the will he looked upon as a *strong* circumstance, when aided by the *manner* in which the testator had devised his plantation. When he meant to give an estate for life therein, he expressly said so; and his silence as to the extent of the estate devised to his two nephews, evinced that he meant to give them an estate in fee simple, as fully and absolutely as he himself held it. Judging on the whole of the will, he apprehended that the intention of the testator might be fairly collected from thence to give his nephews an estate of inheritance in his plantation, without infringing the settled rules of construction of wills, which had obtained either here or in the *English* courts.

Judgment affirmed.