## Case No. 13,108.

### SMITH v. SHRIVER.

### [3 Wall. Jr. 219; 1 14 Leg. Int. 172.]

Circuit Court, D. Pennsylvania. April Term, 1857.

WILLS—DEVISE — FEE SIMPLE — RESPECT DUE TO STATE COURTS BY THE FEDERAL COURTS.

The disposition of the federal courts on questions relating to real estate, to follow the law

1 [Reported by John William Wallace, Esq., and here reprinted by permission.]

of the states as settled by their courts of final jurisdiction, is so strong, that it will not enter into any consideration of the conflicts that have existed from time to time, or all the time, between the court under different organizations or different sets of judges; nor go into any comparison of the respect which is due to a majority of the court, who by a bare majority carried a decision in one way, with the respect due to a very able minority who have constantly and strongly dissented. If the decisions are not in equilibrio, this court, on such questions, will take the law as it appears to be settled by the last decision, without entering upon the question whether on true principles it was rightly or wrongly decided.

Meyer made his will in these words: "As to such worldly estate wherewith it has pleased God to bless me in this life, I give and dispose of the same in the following manner, to wit: I give, devise and bequeath unto my beloved wife Elizabeth, eighty-five acres and allowance of land of my dwelling plantation whereon I now live, she to have the choice of the same wherever she thinks proper; and further, I do give and bequeath unto my said wife all my movable property or personal estate, of what kind or nature the same may be, together with all the moneys do me, by bond, note, or book account, to and for her only proper use and behoof whatever. Item, it is further my will, that my brother and sisters divide the residue of my said plantation amongst themselves, share and share alike. And lastly, I nominate and appoint," &c. The question meant to be raised by this suit—an ejectment—was that often litigated question, "did the widow, devisee, take a fee in the estate devised to her, or only a life estate?" though the question, as regarded by this court, was, rather, is this court at liberty, in view of certain decisions already made upon the point by the supreme court of Pennsylvania, to entertain that question as an open one at all?

The history of the Pennsylvania decisions on the point,—that is to say, whether a devise of real estate to a person, no mention being made whether the estate was meant to be for life or in fee,—does or does not carry the fee, is as follows: The first case which arose on it in Pennsylvania, was French v. McIlhenny (1809) 2 Bin. 13, in which Tilghman, C. J., adhering to the English precedents, held in a hard case, that no fee passed. But his associates, Breckenridge and Yeates, doubting his correctness on the special case, could not agree with him, and in fact overruled him, establishing the law that such devises do, in this country, carry a fee simple. In 1811 came Clayton v. Clayton, 3 Bin. 476, which—the same court being on the bench—does, without overruling French v. McIlhenny, certainly impair its authority. In 1826 came Steele v. Thompson, 14 Serg. & R. 84, Tilghman, C. J., being still on the bench, but Judges Gibson and Duncan having come into the places of Breckenridge and Yeates, who with Tilghman, C. J., composed the court when the last two cases were decided. Gibson, J., being of Tilghman, C. J.'s, way of thinking on this point, the judgment in French v. McIlhenny, was overruled, in favor of Tilghman, C. J.'s, original minority opinion there; and the law was now settled that a fee would not pass. Judge Duncan, however, dissenting strongly against this view of Tilghman and Gibson. In this way, with some dicta and decisions, which occasionally looked a little the other way, the law remained unquestioned on the circuits, and in inferior courts, until about the year 1850, when in the court of common pleas of York county, the Hon. Ellis Lewis, president of that court, held that these kinds of words do pass a fee simple. His opinion coming in Weidman v. Maish, 16 Pa. St. 511, before the supreme court, in which Gibson had now for many years been chief justice, was overruled; by a bare majority, however, whose opinion was given in a short and somewhat decided style by that very able and very amiable, but (when speaking of pretenders of any sort) not always very bland or ceremonious chief justice. So things remained for two years; during which two years, however, the constitution of the state was changed, and the composition of the court had changed, with it; Gibson, who had been chief justice in 1850, being now only an associate, and the only member of the late court now on the bench; and Lewis, whose opinion had been overruled, as just now stated, having risen, by popular election, from his subordinate position where he was overruled, to be a judge of the supreme court, which had the power of overruling not only others, but itself also. Accordingly, the question was again raised on the very will on which the judgment had once been given while Gibson was chief justice, in Weidman v. Maish; and now in Schriver v. Meyer (decided in 1852) 19 Pa. St. 87, a majority of the court (Lewis, Lowrie, and Woodward, JJ., in the face of powerful dissenting opinions from Black, C. J., and Gibson, J.) overruled Weidman v. Maish, and settled as the law of Pennsylvania what had been decided on this same will by Lewis when president judge of York; Justice Woodward, who finally turned the scale by his casting voice to that side, having afterwards declared that finding in Weidman v. Maish, "an opinion from a judge (Gibson) who was entitled to his profoundest deference that the will there created only a life estate, he had paused long before he consented to Judge Lowrie's opinion that it created a fee;" though on reflection he was well satisfied that he had done so. Schriver v. Meyer was affirmed in the same year in Wood v. Hills, 19 Pa. St. 513, by the same divided court just mentioned, st. Lewis, Lowrie and Woodward, JJ., against Black, C. J., and Gibson, J.; and also in 1854, two years afterwards, in Shinn v. Holmes, 25 Pa. St. 142, unanimously, so far as appears by the opinion of Lewis, J., who gave the opinion of the court; Gibson,

Ex Chief Justice, having now departed this life

In this melancholy condition of judicial discord in the supreme court of the state, parties interested now brought this same will, which had been the subject of the discordant decisions in Weidman v. Maish and Schriver v. Meyer, into this court, arguing that the law of Pennsylvania could not be regarded as settled under such a state of circumstances as those above given; that the later decisions had been barely carried; and that even if the majorities which settled them had been much larger than they were, the strong, steady, and long continued dissents of three such men as Tilghman, C. J., Gibson, C. J., Black, C. J.,—the first of them the most cautious and safe, and the other two the most vigorous and able of all the judges who ever sat in judgment in this state, would, in the professional mind everywhere, and in all courts not bound to obey, as a technical authority, the last decision of the supreme court of Pennsylvania, carry a weight of influence which would overcome the mere weight of adjudication. In the case of this special will, it was said, there was decision exactly balancing decision, Schriver v. Meyer, 19 Pa. St. 87, overruling Weidman v. Maish, 16 Pa. St. 510, and leaving the law upon this will just where it was. It was said to be vain to talk about the obligation of precedents on such a point as this, and especially to talk about Schriver v. Meyer as being a binding precedent for anything. That case had "murdered" precedent. It went on the ignoring and abnegation of all precedent as its fundamental principle, as was thought to be apparent on its face. "But it is demanded," says Lowrie, J., giving the opinion there, "that we shall follow the decision in Weidman v. Maish, where this very devise has received a construction. And why must we follow it? Because we or our predecessors have wronged one man by our blunders, must we therefore wrong others for the sake of our consistency? Does the doctrine of stare decisis hold us to conform to that decision? I trust that this doctrine shall never be held to mean that the last decision of a point is to be taken as the law of all future points, right or wrong." These principles taken from the opinion in Schriver v. Meyer, the counsel arguing that the will gave but a life estate, held as the light by which that case, considered as a precedent, was to be read.

GRIER, Circuit Justice. There are two great rules in the construction of wills, which often come into conflict, and have been fruitful in litigation. One is, that the intention of the testator must prevail; the other, that the heir-at-law shall not be disinherited without express word or necessary implication.

That the application of the latter rule has had the effect of defeating the intention of a testator in ninety-nine cases out of a hundred, has often been a subject of complaint. "I verily believe," says Lord Mansfield (Mitchell v. Sidebotham, 2 Doug. 759), "that in almost every case where, by law, a general devise of lands is reduced to an estate for life, the intent of the testator is thwarted. For ordinary people do not distinguish between real and personal property." So also, Mr. Justice Buller, in Palmer v. Richards, 3 Term R. 359, says, "There is hardly any rule of this sort where only an estate for life is held to pass, but that it counteracts the testator's intention." Courts, thus feeling compelled to enforce this arbitrary rule, even when conscious that they were perverting the will of the testator, have been astute in searching through the corpus of the will for some expression from which to draw an inference of an intention to grant a fee, where words of inheritance, or technical language, expressing such interest, could not be found. For this purpose, the word "estate," among others, has been laid hold of as one which described the whole interest of the testator, when not used as a term of description.

The devise to the wife in this case contains no words of limitation, and taken by itself would convey only a life estate according to the established rule. Yet no man untrammelled by technical rules of construction, adopted by the courts can read this will without feeling a conviction that the testator intended to give to each of his devisees his whole estate in the premises respectively devised to them. The great difficulty in this and similar cases is, to find some other words or phrase in the will to justify the court in giving effect to the apparent intention without disregarding the stringent rule of construction altogether, and subjecting themselves to the imputation of conjectural emendation. For this purpose the introductory words of the will have often been referred to, as showing an intention to devise the testator's whole estate. In this case the words are—"As to such worldly estate wherewith it has pleased God to bless me in this life, I give and dispose of the same as follows."

Whether this language in the introduction can be carried down to the dividing clause, so as to make a part thereof, and enlarge the devise to a fee, is the question in the case.

If this question were to be decided entirely on English precedents, it must be admitted, that the rule established there is, "that the word 'estate,' merely used in the introductory clause of a will, when the testator professes in the usual manner of his intention to dispose of all his worldly estate, will not have the effect of enlarging the subsequent devises in the will to fee."

Rules of construction of wills become rules of property, and the stability of titles greatly depends on adherence to them when once established. Hence the question in this case is one of Pennsylvania law, as settled by her own courts. How far they have adopted the policy of England in enforcing a rule of con-

struction favorable to the heir-at-law, is a question to be decided by them. Their former decisions cannot be reconciled. Some one of them must be overruled and the others established; and if their own tribunals have done this, it is not for this court to criticise or doubt the correctness of their decision. The legislature of this state in 1833 have cut the knot as to all wills made since that time, by abolishing the rule altogether, and declaring that "all devises of real estate shall pass the whole estate of the testator in the premises, although there be no word of inheritance, unless it appear by a devise over or other words of limitation, that the testator intended to devise a less estate."

This will was made before the passage of this act, and has been twice before the supreme court of Pennsylvania. In the argument of the case of Weidman v. Maish, 16 Pa. St. 510, the introductory clause in the will does not appear to have been relied on, there being other expressions in it which, it was contended, justified the construction that an estate in fee was intended. The opinion of the court considers those arguments, disposing of the introductory clause in a single sentence. In the case of Schriver v. Meyer, 19 Pa. St. 88, the case turned entirely on the effect to be given to this introductory clause. A solemn decision of the supreme court supported either view of the question,—the case of French v. McIlhenny, 2 Bin. 13, on one side, and Steele v. Thompson, 14 Serg. & R. 89, on the other: but each decided by a divided court; Judges Yeates, Breckenridge and Duncan on one side, and Chief Justices Tilghman and Gibson on the other. In such a contest who is to decide? Not the courts of the United States. "Non nostrum est tantas componere lites." The supreme court of the state have met the question and have decided it. After the able opinion delivered on the occasion of Schriver v. Meyer, by Mr. Justice Lowrie for the court, and Mr. Justice Gibson dissenting, further discussion of the merits of the question would be superfluous—all has been said that can be said on either side.

Instead, therefore, of again discussing this moot question, this court feel that it is their duty to follow what now appears at last to be the settled doctrine on the subject. In addition to the early case of French v. McIlhenny (1809) 2 Bin. 13, we have now Schriver v. Meyer, 19 Pa. St. 87, Wood v. Hills, Id. 513, and Shinn v. Holmes, 25 Pa. St. 142, all concurring. The authorities are no longer in equilibrio. The question is settled, and should not be again disturbed. It will soon become obsolete under the wise legislation abolishing the old common law rule, which subverted the intention of the testator to subserve the policy of English institutions. The courts of Pennsylvania will of course adhere to the rule, as settled by their own highest tribunal.

We are not disposed to encourage cases like the present. It is an easy thing under the transparent contrivance of a transfer to John Doe or John Smith (supposed to reside in another state), to bring every question of title to real property before the courts of the United States. This is the last of many cases, and I hope will continue to be the last, where titles decided in the state courts, after years of exhausting litigation, have been thus transferred and the litigation renewed, in the vain hope that the courts of the United States will assume to reverse the supposed errors of the state tribunals in questions of real property in dispute between their own citizens.

In such cases it is our duty to pronounce the law of Pennsylvania, as defined by her own legislature and judiciary, and not to assume the position of umpire and pronounce the opinion of even the ablest minority of her judges entitled to more respect than that of the majority, and thus add to the confusion and uncertainty of titles. It would be a humiliating spectacle if this court should, under one rule of construction, deliver the land to the heir-at-law, who would probably be turned out of possession immediately by the devisee, in an action brought in another forum. Such would, I doubt not, be the result of a judgment for plaintiff in this case; and such a collision of judicial authority can only be avoided by the course now pursued.

Pease v. Peck (Sup. Ct. U. S.) 18 How. [59 U. S.] 598, which enumerates certain instances as exceptions to the rule of adhering to state decisions, does not apply to the present.

Judgment accordingly.