Tilghman C. J.
after reciting the will of John Hoge the elder, proceeded as follows: — It is not clearly expressed what estate the testator intended for his son John. He gives him' the land, provided he lives and improves upon, and enjoys it. The clearing and improving of land, in the year 1748, was a business of expense, and might be attended with loss to the person upon whom the condition was imposed, unless he had an estate greater than for life. It might therefore fall within the reason of the rule, by which a fee-simple is implied, when the devisee is ordered to pay a sum of money. The restriction as to the power of selling, seems also to favour the supposition that the testator intended something more than a life estate for his son; because, if he had only given him an estate for life, he would have had no power to aliene. But it is clear that on a certain event it was intended that the estate of the son should not continue longer than his life; and that event was the leaving of a son who should be living at the time of his father’s death. But suppose the devisee, {John, son of the testator) should have died, leaving no son, but a daughter; was the estate in that case to have passed from his daughter, and gone over to his brothers ? Certainly not; it was not to go to. the brothers, unless John died leaving no issue. The intention then, upon the whole, was that John the son should take a fee-simple, *152 subject to this condition; that his estate should cease, and 'the land should go to his son, in case he left a son-; and that it should cease and go to his brothei-s, in case he left no issue. This is what is called a contingency with a double aspect, to be. ascertained at the moment of John’s death. If he left a son, the estate would be vested in that son; if he left nb issue, it would be vested in his brothers; but if neither of these contingencies happened, that is to say, if he left a daughter, but no son, his estate in fee simple became indefeasible. If this was the testator’s intent it must be gratified, unless inconsistent with some principle of law. But I know of no principle with which it may not be reconciled. A fee may be given after a fee by executory devise, provided the contingency upon which the executory devise is to take effect, is not postponed longer than the end of a life which is in existence at the death of the testator. This case is within the rule, because the devise over could not be suspended longer than the death of the testator’s son John. But it is contended on the part of the plaintiff in error, that John took an estate-tail by virtue of the expressions by which the estate is given to his surviving brothers or their issue, in case he died without issue. The dying without issue is supposed to relate to an indefinite time, and not to be confined to the death of the testator. If that were the true construction, I should agree with the counsel for the defendant in error, because, there being no devise by which such issue could take by purchase, it would be impossible to let them in, otherwise than in a course of descent. But the most simple and natural meaning of dying without leaving issue, is leaving issue at the time of the devisee’s death; nor is there any reason for relinquishing this meaning, unless it leads to some inconvenience, or thwarts the intent to be collected from other parts of the will. If the first devise to John had been for life only, then the subsequent expression, “ if he die without leaving issue,” would have been construed an indefinite dying without issue, to avoid a manifest inconvenience, viz. the inconvenience of the issue, if daughters, being disinherited, contrary to the intent of the testator. In such case, therefore, the main intent being that the son should take first, and his issue of every kind, sons as well as daughters, after him, it would be impossible to carry this intent into effect, otherwise than by enlarging the life estate to a fee-tail. But if the first devise carried a fee sim~ *153 pie, the daughters Would take after their father’s death, unless he thought proper to' give the estate to some other person by devise, which he might do, for he is. only restrained from selling. There is moreover, a great objection to the enlarging bf John’s estate to á fee-tail, by implication, because it would be raising án implication in' order to defeat the favourite wish of the testator, which was to secure the land to the son of John, in case he should have one. If John took an estate tail, he might first bar it by a common recovery, and then alien the land contrary to the express injunction of the will, because the law would not regard such injunction. The same objection operates also, against the construction of the defendant in error, by which John is made to take án estate' for life with a contingent remainder to -his son. When this will was made John had no son. The remainder would not vest before the birth of a son. If then, after the death óf the testator, John had sufferecl a common recovery before the birth of a son, the remainder could have been, destroyed for want of an estate to support it, because John’s life estate would.have been forfeited by the recovery. So that, taking every, part of the will into consideration, the giving an estate in fee to John, with an executory devise to his son, seems best to accord with the intention of the testator. Upon that • construction, the plaintiffs cannot recover, whether the son of John took an estate for life or in fee. What estate he took,- it is unnecessary to decide. I incline to think, however, that he took in fee ; because the expression is, that he shall enjoy the land, and no restriction of any kind is laid upon him-. Upon the whole, my opinion is, that the judgment should be affirmed. -
Ye ates J.
It is a matter of serious regret, that wills are so frequently the subjects of litigation; but our wonder ceases, when we reflect on the infinite variety of human wishes, — the crude ideas of testators, even in times of health and exemption from bodily pain, embracing favourite objects often irreconcileable with each other, — and the frequent utter incapacity of the persons who are called upon to commit the intention of the party to writing. It has often been justly observed, that mankind in general affect to consider the last disposition of their worldly property as per *154 petual, although, in many instances, they have not contemplated events, which they ought to have provided for.
The general rules for the construction of wills are well extracted from the books, by Cruise on Real Property, in his 6th vol. 157, (Lond. ed.) Amongst others, it is laid down, that no technical words are necessary to convey a testator’s meaning; it must be collected from the whole will, and every part of it must take effect, if it possibly can. Where there is a manifest general intent, the construction should be such as to effectuate it, though by that construction some particular intent may be defeated; the intention of the testator is to be so construed as to be rendered consistent with the rules of law, but, where it is plain, it will be allowed to controul the legal operation of the words, however technical. Introductory words often assist in shewing the intention of a testator; and in such cases the courts have laid hold on them, as they do of every other circumstance in a will, which may help to guide their judgment to a right and true construction of it.
■ I have no doubt whatever, of what John Iioge the first meant in his will. Unquestionably he intended to dispose of the whole of his realty and personalty, from the introductory words, and the expressions, all my other real estate, which connect the devise under consideration, with the devise to his other three sons. To his son John he gave 137 acres of land, “provided he lived and improved upon said “ land and enjoyed it; and if he should have a son of a legi- “ tímate issue, that said son should enjoy the aforesaid land at “ his father’s decease; but his said son John should have no a power to sell or dispose of said land by seal.”
It appears then, that the personal occupancy of the land was devised to John the second, with a restriction, that he should not sell. Upon his decease, if he had a lawful son, such son was to enjoy the property without restriction. The limitation over took place on the death of John the second, and not on an indefinite failure of issue. I therefore consider John the second as a bare tenant for life, remainder to his son John the third, which vested in him on his coming into existence. This construction I conceive to be warranted by Wylde’s case, 6 Co. 17, b. If a devise be to A, and after his decease to his children, A has only an estate for life, because the words plainly shew, that the children were to take *155 by way of remainder. Per Willes, Chief Justice, in Ginger v. White, Willes, 353. The term son, in a will, is said by Pówel, Justice, who delivered the opinion of the court in Luddington v. Keine, to be, without controversy, a word of purchase. 1 Lord Raymond, 206.
The primary general intent of the testator, as to the lands in question, is- obvious, that his son John should enjoy the same during his life, and that on the birth of a son who should survive him, such son should take the premises, unfettered by any restriciion. We cannot but suppose him to have been influenced by some personal family considerations, in discriminating between his four sons, as to the lands devised to them, and laying a restraint on John as to alienation, which he has not imposed on the others: but we find one clause applicable to all; that “ if either of his sons, John, “ Jonathan, David, or Benjamin, shall happen to die, leaving “ no issuer that then the surviving persons, or their issue, “ shall have their equal parts of the deceased’s part.” In a will, issue is either a word of purchase or of limitation, as will best answer the intention of the testator; although, iii the case of a deed, it is universally taken as a word of purchase. In wills, issue will-much more readily bend to the intention, than heirs, or heirs of the body; and according to the penning of this will, this limitation over must necessarily take effect during the lives of the surviving brothers, and cannot be considered as a limitation overtoil an indefinite failure of issue. I have heretofore observed, that when there is a devise to persons in remainder after a tenancy for life, to take distributively and according to proportions, they must take as purchasers, for there is no other way for them to take. Findlay’s lessee v. Riddle, 3 Binn. 159.
The plaintiff’s counsel have contended that John the second took an estate tail under his father’s will, with remainders over to his surviving brothers, under the known rule in Shelly’s case, and the settled decisions of courts of justice upon words of a similar nature. Mr. Justice Blackstone, in his argument in the case of Perrin’ and Blake, doubted' whether this rule took its rise merely from feodal principles, and was rather inclined to think, that it was first established to prevent the inheritance from being in abeyance. Harg. Law Tracts, 498. But whatever may have been its origin, if it is now incorporated into our system as a rule of *156 property, we are bound by it in all cases to which the rule is correctly applicable. In Findlay’s lessee v. Riddle, before cited, I have attempted to consider this rule pretty fully. I adhere to the opinion which I then formed, that it is not of so inflexible a nature, as not to bend to cases on wills, where the plain, manifest intention of testators, adverse to the rule, can be fairly collected from their own expressions, and the same be not repugnant to law. I cannot assent to the rigour, of the rule, as asserted by Mr. Hargrave, in his. Law Tracts, 561, that it musthe applied, even though the party shpuld express in his will that the rule should not be applied, and that the remainder to the heirs of the tenant for life, should operate by purchase. Amongst the exceptions to the rule, I have particularly animadverted on Doe ex dem. Long. v. Lanning, (2 Burr. 1100. 1 Bla. Rep. 265,) on a devise of gavelkind lands, and have said, that the remarks of Lord Mansfield, as to gavelkind lands, apply with peculiar force to the equal spirit of our laws regulating the descent of real estate.
Mr. Hargrave himself admits, that the rule in Shelly’s case supposes the intention .already discovered, and to be, that the gift, or conveyance in question, has first given to some person an estate of freehold, and then superadded a succession to the heirs general or special of that same person, by making him or her the ancestor, terminus, or stirps, by reference to which the whole generation or posterity of heirs is to be accounted. (Law Tracts, 574,). See 1 Fearne, 295.
Words of explanation annexed by the devisor to the word-heirs, discovering his apprehension- that;he may have used it improperly, and correcting the inaccuracy of his own phrase, will take the case out of Shelly’s rule. Hargr. Law Tr. 505. Burchell v. Durdant, 2 Ventr. 311. Lisle v. Gray, 2 Lev. 223. Lowe v. Davis, 2 Ld. Raymond, 1561. Long v. Laming, 2 Burr. 1100. In the present instance, I consider the testator’s expressions to convey the same idea. To his son John he plainly gives the enjoyment of the land for life, restraining him from sale, to go. over on his decease to his lawful son, free from restraint, and connecting the introductory words, such worldly estate, with the words, all'nvy, othemreal estate, which immediately follow the devise in question. No doubt whatever rests oh.my mind, that an estate :of inherits *157 ance, something more than a life estate, was intended to be given to the grandson. Besides, the rule in Shelly's case does not apply to the words sons, or children ; and therefore a devise to A for life, with remainder to his sons of children, or to his first and other sons or children, gives an estate-for life only to A. The usual mode of creating a strict settlement by will, is to devise to the eldest son for life, with remainder to his first and other sons successively^ and to the heirs male of their bodies. 6 Cruise, 344. In support of this position are quoted, a case cited by Lord Hale in 1 Rol. Abr. 837, pl. 13. Ginger v. White, Wittes, 348. Goodtitle v. Woodhull, ib. 392. Goodright v. Dunham, Doug. 264.
Even the term heirs may be construed as a word of purchase in a will, when the testator appears to have used it with a view of designating a particular person. Smith’s lessee v. Folwell, 1 Finn. 539. Here that term is not used, but the words are, son of a legitimate issue, the production of an illiterate person, which can have no other .meaning, than a male child by a lawful marriage. In the language of Hargrave (Law Tracts, 574.) such son designates only a certain individual person, answering the description of the testator. Upon the birth of this son, the remainder, which was in the first instance contingent, became vested in him, and was not barred by the common recovery suffered by the father.
Adjudged cases have also been relied on by the plaintiff’s counsel. I admit, that where certain words have received a settled meaning, after full discussion in courts of justice, such decisions should not lightly be departed from. — Manifest uncertainty would result from such deviations. But it is remarked by Lord Chief Justice Wilmot, that cases on wills have no great weight, unless exactly similar in every respect. 2 Wils. 324. 3 Wils. 247. To render them authoritative, they should be in verbis ipsissimis, and made by the testator in the same situation and circumstances. Barr, on Stat. 370. Otherwise the intention is to govern,as it appears from each will. Ib. This is the great primary rule, provided the estate devised be consistent with the established rules, of law. We need not the authority of Blackstone (Hargrave’s Law Tr. 491.) to assert, that unless the true meaning of a testator should govern, it would be an infringement of that liberty of disposing of a man’s own property, which is the most powerful incentive to honest industry, and is therefore essential to a free and. commercial country.
*158 The first case relied upon is Robinson v. Robinson (1 Burr. 38.) which was sui generis. There the devise was to Launcelot Hickes for life and no longer. But this particular intent was inconsistent with the testator’s general intent, which was that the whole line of male heirs of L. Hickes should take, and that general intent was properly effectuated. In Smith et ux. v. Chapman et al. 1 Hen. & Mumf. 299. Judge Roane Observes, that L. Hickes and his son were to take the name of Robinson; and it was deemed improbable that the testator would impose and perpetuate the name upon him, and yet that the estate, in consideration of which it was to be assumed, was to endure only for life. The perpetuity also of his presentations was given to L. Hickes, (subject, &c.) in the same manner, and to the same uses as he had given his estate, thereby explaining the former devise by the latter. Mr. Cox remarks, in his. notes on Bamfield v. Popham, (1 P. Wms. 54.) that as to estates raised by implication in a will, no general rule can be laid down; such construction will be made thereon, as is necessary to effectuate the general manifest intention of the testator.
In Roe ex dem. Dodson v. Grew et al. (2 Wils. 322.) also cited, the devise was “ to George Grew during the term of “his natural life,and from and after his decease to the use of “ the issue male of his body lawfully to be begotten, and the “ heirs male of the body of such issue male, and for want of “ such issue male, then over in fee.” These words peculiarly imported an estate-tail, and the great intention of the testator was that the' sons of George Grew should take in succession, which they could not do if he was only tenant for life. The particular intent gave way to the' general intent.
Dubbes ex dem. Trollope v. Trollope (Ambler. 453. Robinson on Gavelkind, 96,) was the last casé relied on by the plaintiff’s counsel. There the testator' devised “ the manor to his eldest “ son William for life, remainder to his first son for life, remain“der to the right heirs male of his body lawfully begotten, “ remainder to the second, third, fourth, fifth, sixth, seventh “ sons of the body of William and the heirs male of their bo- “ diés lawfully begotten, and for want of such issue to his se- “ cond son Thomas for life, and after to the first heir male of “ his body lawfully begotten, remainder to his third son Chris- “ topher and the heirs male of his body, remainder in like “ manner in tail-male to the fourth, sixth, and seventh sons, *159 « &c.” And the court held that the words-Aeir male were to be understood collectively, and that Thomas, the second son, took an estate-tail, it appearing that such was the testator’s intention by the other devises. It was distinguished from Archer's case, no limitation being superadded to the words first heir male, and the word first was understood first in order of succession from time to time.
I have already taken notice that the word heirs, which occurs in these three different cases, is not to be found in the will before the court, the word son being used; and that the provisions in this will are equivalent to words superadded in the limitation over, on the decease of John the son: in neither of those cases was the interest devised to the first taker, fettered with a clause restraining him from alienation, which was omitted as to his son in remainder. They were severally determined on the ground of the testator’s general intention, and proceeding, as I conceive, on the same principle, I am of opinion, that John the son only took an estate for life, in the 137 acres of land devised to him, and that John the grandson took the remainder by way of purchase, and not through his father; but whether in fee simple, or in fee-tail, I feel it unnecessary to give a decided opinion; and, consequently, that the judgment of the Court of Common Pleas of Cumberland county be affirmed.
Bh.ackenb.idge J.
This case has been kept under advisement since the last term at this place. I had made up my mind at that time; and I find indorsed on the paper book the following, by which I abide, not having given it any re-examination during the interval. - The indorsement which I made is in the following words: “ I. am of opinion, that John “ Hoge the second, took an estate for life with a contingent “ remainder in fee to John the third, with an executory de- “ vise to the brother in fee, on John the second’s death, “ without leaving issue living at the time of his death by way “ of substitution.”
J udgment affirmed.