Tilghman, C. J.
The principal point in this cause arises on the will of George Liggett the elder, deceased, and the question is, whether ah estate in fee, or for life only, passed by the devise to George Liggett, ju'nior, son of the testator. The will begins with the usual introductory words, “As touching my worldly substance with which it hath pleased God in this life to bless me, I give, bequeath, and dispose of the same in the following manner.” Then cdmes the devise to the testator’s son George, in the following words, — “ I make over and bequeath to my son George Liggett, the plantation Í now live on, which hath tw’o deeds.” Immediately after this are the following devises : “ Also, I give and bequeath to my son John, the plantation in East Nantmill township, in the aforesaid county; also, I leave my daughters, Rachael and Margaret, the plantation in East Falloiofield township, in the aforesaid county.” Legacies of fifty pounds a-piece are then given to the testator’s daughters, Mary, Jinn, Ruth, and Rebecca, to be paid when they respectively come of age, and also fifty pounds to his daughter Elizabeth M‘Kinley, and ten pounds to his grandson George MlKinley, to be paid when he is of age. The personal estate is directed to be kept together to maintain and school the children, as formerly, until George comes of age, and then divided in three parts, — one to the testator’s wife Elizabeth, one to his son George, and one to his son John; but if it amounts to more than fifty pounds a-piece, then the overplus to go as directed by the will. And after George came of age, the testator’s wife was to have such part of the house as she pleased, while she lived a widow. These are all the parts of the will which can throw any light on the devise to George, the son.
I have considered this case with a strong inclination to give an estate in fee, to George and the other devisees of the real estate, but I have not been able to find enough to justify the construction I wished to adopt. I agree that the construction is to be governed by the will of the testator, where it plainly appears; but then, it must appear from the words of the will, and not from conjecture. I take the rule to be, that where a devise is made in words, from which the law implies an estate for life, and no words of limitation are added, the devisee can take only an estate for life. But as no technical words are necessary to show an intent to give a fee, any words which show such intent are sufficient. If, for instance, the testator should say, I give to such a one an estate in fee simple, or for ever, a fee simple would pass. So, where the words show an intent to give the whole estate, or the whole property. In Hogan v. Jackson, Cowp. 299, the devise was, of “all the remainder and residue of all the effects, both real and personal, of which I shall die possessed.” Held, that the devisee took a fee. In Morrison v. Semple, 6 Binn. 94, a devise of all the testator’s real and personal property, was construed a fee. The same construction was put on .the word properly by the Supreme Court of *89 New York, in Jackson v. Housel, 17 Johns. 281. So, a devise of “ cm improvement,” has been held to pass á fee in Pennsylvania, 1 Dall. 477,) because, by an improvement is understood all the right which a man has to land, by virtue of an improvement made on it. In all these cases, the words indicating a fee simple were applied directly to the devise itself, and left no room for conjecture. The intent was plain, to give the testator’s whole interest in the land devised. The" same intent appears in a devise of all one’s lands of inheritance. Whitlock v. Harding, Moo. 873, or. in a devise of all the estate I bought of A. Bailes v. Gale, 2 Ves. 48. But where the words are only descriptive of the situation of the land devised, and not indicative of the quantity of estate intended to be given, a fee simple will not pass, because no intent appears to give such an estate. “ I devise all my estate at such a place” — this carries a fee. Ibbotson v. Beckwith, Gas. Temp. Talb. 157. But, u I devise all my land, at such aplace,” gives only an estate for life. Where no words of limitatioa are added to a devise for life, the case cannot be helped by conjectures founded upon other parts of the will, not applicable to the devise in question, from which it might seem probable that he intended to give a fee. As, where there was a devise of ten shillings to the heir at law, this was not thought sufficient to increase a devise, without words of limitation in a preceding part of the will, to an estate of inheritance. That the intent was, to give an inheritance, was highly probable; but something more was necessary: there were no words which gave the inheritance to any other person, and therefore it descended to the heir. There have been various opinions concerning the inferences which may be drawn from the. introduction of a will, where it expresses an intent to dispose of the whole estate. In connexion with other circumstances, such an introduction may be worthy of consideration, but the better opinion seems to be, that there is not much in it, because it is generally considered by the drawer of the will as matter of form, and put down of course, before he begins to express the will of the testator; and because it cannot be doubted, that most men when they make their wills, do intend to dispose of their whole estate, whether they say so or not. I am sensible, that in some courts, there has been a pretty strong current in' favour of construing a devisé to be a fee, without words of limitation, from a supposition, that such was the intent of the testator. I believe, that in truth, such often is the intent — but I object to conclu-clhsions founded on mere conjecture; because they render'the law uncertain, and leave too much to the humour of the judge, and I think I am supported in my objection, by the opinion which ‘ has generally prevailed in this state. We seem to have been more steady in our notions on this point, than some of our neigh-bours, and to have thought it prudent to adhere to the law, as we had it from England, at the time of our revolution, Roe v. Bluc *90 -kett, 1 Cowp. 235, was decided in 1775, the year before our declaration of independence; and there the opinion delivered by Lord Mansfield was, “ that in order to make a devise of lands, without any limitation, a fee, such an intention must appear as to satisfy the conscience of the . court, in presuming it. If it is only problematical, the rule of law must take place.’’ And in Frogmorton v. Wright, decided in 1773, 2 W. Bl. 889, where the will had the introductor}? words, “ as touching the disposition of all my temporal estate, &c.” after which the testator made a devise to his nephew A. of “ two houses, with a croft and appurtenances,” it was held that he took but for life. And De Grey, C. J., thus expressed himself: “Though the probable intent of the testator was an absolute disposition, yet it is not a certain intent, nor is it a legal disposition. There is ho case where the introduction of the will only, has been held to give a fee, and though sometimes the devise of an estate may carry a fee simple, yet a devise of a house will nbt do it.” I am aware that in the case of French v. M'Ilhenny, 2 Binn. 13, this court departed from what I suppose to be the true rule of construction. But the court was not unanimous in its opinion. And certainly the authority of that case was much shaken by the judgment in Clayton v. Clayton, 3 Binn. 476. Indeed, it appears plainly by the opinion of Judge Bsackenridge, in the. latter.case, that while he himself adhered to French v. M‘Ilhenny, he considered Judge Ye ates as giving it up. As Clayton v. Clayton has a strong bearing on the case before us, I will give the words of the devise. “I give and bequeath unto Sarah Evans, wife of James Evans, and granddaughter of my sister Margaret Jones, and to her children, the plantation they now live upon, being the same that I bought of Joseph Jones, containing one hundred and seventy-five acres, for 'the use of her the said Sarah Evans during her life, and immediately after her decease, to be equally divided among the surviving children of her the said Sarah Evans.” Here, certainly, was a strong probability, from the circumstance of the.children taking nothing until the death of their mother, and then having the estate dividéd among them, that a fee simple was intended for them. Yet, as the intent was not certain, and did not appear from the words of the will, it was held that they took but for life. To examine all the cases on this subject reported in the English and American books, would be a task both endless and useless; for it cannot be denied, that they are not to be reconciled. I have cited such as I think to be of good authority, and sufficient to support the rule of construction applicable to the case before us, and' will now make some remarks on the will of George Liggett, in order to see whether an intent to give a fee is sufficiently manifest, notwithstanding the want of words of limitation. As to the introductory words, having already fully expressed my sentiments of their value, I have nothing to add on that head. Next are to be *91 considered some words in the devise to George, which the counsel for the defendant thought to be important, though they have not struck me as so. I allude to the words, “ I make over and bequeath.” Now, it is clear enough that these words are used as synonimous; because.the testator had no intention of making over, otherwise than by his will, nor have we any warrant for saying, that a more extensive meaning should be given to the words make over, than the wopd bequeath. Nay, more, it' is evident that a more extensive meaning was not intended, because, in the devises immediately following, to his son John, and daughters Rachael and Margaret,'the words make over are omitted. The expressions are, “ I bequeath to my son John" and, “ I leave to iny daughters Rachael and Margaret.” But it cannot seriously be supposed that the testator intended one kind of estate for George, and another for John, Rachael, and' Margaret. Something was said of an implication arising from the testator’s describing the plantation devised to George, as having two deeds. But this is mere matter of description, for the purpose of identifying this plantáti-on, and distinguishing it from the other lands of the testator. It would be forcing the words from their natural meaning, to construe them as giving the whole quantity of estate conveyed by these deeds. Stress was laid, also, on that part of the will, by which it is ordered, that after George comes of age, the testator’s wife was to have such part of the house as she pleased, while she lived a widow. If this provision was inconsistent with the devise of a life estate to George,Y grant that it would show an intent to give him an inheritance. As where land, having been devised to one without words oflimitation, the devisee is afterwards ordered to pay a gross s.um to another, there would be an inconsistency if th.e devisee took less than an estate of inheritance, because, otherwise, it might happen that he would be a loser by the devise. But I see no inconsistency between a life estate to George and this privilege granted to the widow'; because she would enjoy it after George’s death, even though he took but an estate for life. The intent of the testator was, that the family should be kept together, and the personal estate preserved for their use, till George came of age, and then things were to be put on a different footing. George being of age; could take possession of his estate, the personal property was to be divided, and the widow to have such apartments in George’s house as she chose, for her residence. And all this might very well be, and yet George take no more than a life estate, I am of opinion, therefore, that he took but for life, the immediate devise to him giving him no more, and no plain intent to give an inheritance being expressed, or fairly deducible from any other part of the will. I have been induced, in consequence of a difference in opinion which I regret, to say much more on the subject of this devise, than I should otherwise have thought necessary, or even proper.
*92 Another point which arose on the trial of this cause, in the Court of Common Pleas, was, whether the acknowledgment of a deed by a feme covert be good, unless it be expressed in the certificate of the magistrate who took her acknowledgment, that the contents of the deed were known to her. In delivering my opinion in M‘Intire v. Ward, 5 Binn. 296, I desired it to be .understood, that I did not consider this question as having been decided in Watson v. Bailey. But the acknowledgments of femes covert have frequently been brought before the court since, and I take the principle to have been established, that it must appear on the face of the certificate that the directions of the act of assembly have been substantially complied with. Now, the act directs that the magistrate shall read to the, wife, or otherwise make known to her the full contents of the deed. If he had certified that the .contents were known to her, without saying expressly that they were made known by him, it would have been sufficient; because the fair presumption would have been, that he had informed her of the contents. But, in the, certificate before us, no mention whatever is made of the contents of the deed being known tci the feme covert. The part omitted was material, and therefore I am of opinion that the acknowledgment was bad.
It is proper to add, that Judge Gibson, who is not present, concurs in the opinion I have just delivered, on both points. ’
The judgment of the Court of Common Pleas is to be affirmed.
Duncan, J.
In order to ascertain the intention of this testator, every expression is to be considered, circumstances twisted together, and the sense of every word weighed in the sense he has used it. • We are' not fettered,- nor our understandings chained down by any rigid rules of technical limitation. It is .simply an inquiry, — what did the man intend by the devise of his plantation to his son George? Did he mean to devise to him a life estate, or to give him the same interest he had in it, to be enjoyéd bv him under all the circumstances he had enjoyed it himself? Which of thése constructions will best effectuate every provision intended by the testator ?. If he intended a fee simple, has. he made known that intention plainly, either by express words, or words tantamount, words from which it can be conscientiously inferred he intended a fee? I mean, by inference, a manifest one. Or has he done so by necessary implication,, not by a conjectural imagination, but plain, manifest intention? For if the intention of the testator is to ride over, and control the legal operation of hjs own words, it must be manifest and clear, not doubtful and obs.cure; for if it be doub.tful, if it be in equilibrio, or even in suspense, the legal ope-' ration of the words must take effect. Lord Hardwicke has laid down the rule without that caution and sagacity which so eminently distinguished him. Garth v. Baldwin, 2 Ves. 646. The *93 intention must not be conjectural, but by declaration plain. Will’s Case, 6 Hep. 33. For, as on the one hand it would be very unreasonable to control the plain intent of the testator, so, on the other hand, when it is obscure, or even.doubtful, and liable to a variety of conjectures, it is the best and safest way to adhere to those cri-terions which the wisdom of ages has established for the certainty and quiet of property. Perrin v. Blake, by Mr. Justice Blackstone, Har. L. T. 495. And, in p. 503, that learned commentator on' the laws of England goes on further to enforce the marvellous operation of intention in devises ; for whenever a technical rule is applied to devises, it must give way to the plain and manifest intent of the. devisor, provided that intent be so fully expressed in the testator’s will, or may be collected from thence by such cogent and demonstrative arguments, as to leave no doubt in any reasonable mind, whether it was his intention or not.
Courts, on the doctrine of intention, profess, to decide on the will itself, according to the particular words, objects, and views of the testator, and not on cases cited. . Every case of this cast is individual. There can be no adherence to precedents, for no two wills can be exactly alike. A late eminent Chief Justice, when cases were urged on him, exclaimed, “ If a case can be found, which is in words and syllables the same as this, and contrarily decided, I am bound by it.” Another very eminent judge thus expressed himself: “I, for one, would'be sorry to decide on this case by one of the same kind, unless, on comparison, the two are found precisely alike.” And by the learned Judge Patterson, in Lambert v. Paine, 3 Cranch, 133, “The will of A. can afford little or no use in discussing and expounding the will of B., for in the great mass of wills, it is impossible to find two exactly alike.” And by Mr. Justice Ye ates, a judge not exposed to the charge of casting off the authority of decisions, it was said, “ that to render cases on wills authoritative, they should be in ipsissimis verbis, and made by the testator in the same situation and circumstances.” Hoge v. Hoge, 1 Serg. & Rawle, 157. Chief Justice Wilmot has often said that cases in the books on wills had no great weight with him, unless they are exactly, on the very point. Lessee of Roe v. Grew, 2 Wils. 324, and Lessee of Brown v. Holmes and another, 2 Wils. 247.
It is a material consideration in the construction of wills, that the will is the will of an illiterate person, ignorant of law language and forms, and it certainly is, where it is a provision for children, by a father. In the construction of wills, technical words are only applicable to the nature and operation of the estate or interest devised, and not to the meaning of words. A man cannot create a perpetuity; he cannot put a freehold in abeyance, or limit a fee upon a fee. But otherwise there can be no magic or particular force in certain words; their operation must arise from the *94 sense which they convey. The question of intention, as to its consistency with the rules of law, never can arise, until it is settled what that intention is, and this cannot be discovered but by taking the whole will together, — its four corners; and then, if the intention be apparent, there is no case in which the technical rule shall prevail. That words of inheritance are necessary to convey a fee simple, is certainly a good general common law rule; yet, in the case of wills, it is entirely subordinate to the testator’s intention; for if that is discovered, no matter by what words, it must be effectually carried into execution. The same words may be taken in different senses in different wills, and even in the same will, owing to the association and the manner in which they are placed. My farm, my plantation, my house, contain no more than a description of the thing, and convey only an estate for life, because unconnected with any words of inheritance; but if such intention be discoverable, then a fee passes. Lambert v. Paine, 3 Cranch, 133. The expression of such intent admits of infinite variety, depending on the special and particular penning of the will. I acknowledge the law to be, and I disclaim our power to alter it, that in the devise of real property, where there are .no words of limitation, and no necessary implication from the whole body of the will to give a larger estate, the devisee takes but an estate for life.
It is a sound construction of any instrument to look into the body of the thing to be construed, and to collect, as far as may be done, what is the intrinsic meaning of the thing, and if that can be clearly discovered by reference to its own context, then to give effect to that meaning. An introductory clause, declaring an intention to dispose of the testator’s whole estate, and, my worldly substance, have been often decided to have the sa.me import,and when united and linked with the devising clause will give a fee, — “As touching my worldly substance, with which it has pleased God to bless me, I give, bequeath, and dispose of the same in the following manner, that is to say, I make over and bequeath to ray -son George the plantation I now live on, which hath two deeds.” And this, it has been held in some cases, where the introductory clause is disjoined from the' devising clause, by something intermediate, is not sufficient to give a fee.
The introductory words, “As to my worldly substance,” are not strict legal term's. . “ But what is -substance?” says Lord Mansfield, “ It is every propérty a man has, — it means all worldly wealth.” Hogan v. Jackson, Cowp. 307. Thus the testator sets out. He then proceeds to dispose of all that worldly wealth, and provides for every body be was bound to provide for; his wife, his children, his grandchildren; and singles out George his eldest son, (he enjoying, in this state, a right of primogeniture,) by giving him the mansion estate." It is a disposition of his. worldly estate to George, which consists of a plantation with two deeds: thus worldly substance is incorporated with the plantation. Grayson v. Atkinson, 1 Wils. *95 333, as far as a precedent can guide in the construction, furnishes an authoritative one, which never has been weakened by any contrary decision. It is a devise exactly like this: “As to my temporal estate, I dispose thereof as follows,” — and, after giving some legacies, the testator says, “ All the rest of my goods and chattels, real and personal, moveable and immoveable, as houses, tenements, and my share in the copper works, I give to A.,” without any other words of limitation; held to pass a fee. The reason given by Lord Hardwicee, is, “ that a man is not confined to the use of technical words in his will, but may use what words he pleases, provided he explains his meaning clearly, and the testator has explained what he meant by his goods and chattels, &e.: he says, I meant my house, &e,, and all the rest plainly referred to something he had mentioned before, which he was about to dispose of, and that was all his temporal estate. ”
On a cursory view, there may appear to have been clashing decisions on the effect of the introductory clause; but, on a careful examination, they can be reconciled, and this clear principle extracted: — The introductory clause, per se, and standing alone, unconnected with, and having no relation to the devising clause, will not enlarge the natural meaning of the words in the devising clause, so as to impart a fee; but where.the introductory words, my worldly substance, are coupled with the devise of any land, as, my farm, my plantation, then the context gives a more large and comprehensive sense to the words than they otherwise would have borne; the whole interest in the land. Not that the denuded words, lands, &e. would carry a fee, proprio vigore, but as they derive force from the reference to the introductory clause. Undoubtedly, if there is nothing in the will to connect the different clauses, they must be taken separately; but the arrangement, the juxta position, points out the connexion which the testator intended, and is a plain declaration by one entire sentence, that the testator made over that part of his worldly estate which consisted of his homestead plantation, which had two deeds, to-his son George, thus making it. over to him under the same circumstances, and by the same title, which he himself enjoyed it. And in a. recent case of the highest authority, Wright v. Denn, 10 Wheat. 244, Judge Story, who examined all the cases with his usual industry and judgment, lays down a principle which fortifies the conclusion I have drawn, in this broad manner: “ Wherever the introductory clause can be brought down to the devising one, it will have the effect of imparting a fee:” thus following the doctrine of Lord Mansfield, in Hogan v. Jackson, Cowp. 299.
Why is it that the words land, farm, or plantation should not give'a fee? It is because such words are merely descriptive of the' local situation. But where something is added, denoting the interest in the thing, and not a description of it, an incident of title, then a fee is given. Is there such a word to be found here ? If it *96 is to be found, judges will gladly avail themselves of it to effectuate the intention. There are several expressions which .catch the legal eye, (and no other eye can doubt,) indicating strongly such intention. “ I make over to my son George the plantation on which I now live, which hath two deeds.” Though the plantation on which I now live is purely descriptive, yet the plantation which hath two deeds, is not matter of description, but of the title. He had described it before with all certainty, — the plantation on which I now live, identified 'it. To the matter of distinction there is su-peradded something more, and that superadded matter is the title. To the description there is an adjunct of title, — I make over to George my deeded plantation. Deeds with us, in common acceptation, signify patents. I make over to George my two patents. By this the whole interest in the patents passes. There does not want ancient authority for this; for by the bequest of an indenture of lease, the whole interest passes. Wentworth's Office of Executors, 249. By the devise of the indenture, the testator intended the thing granted by the indenture, and not merely the parchment on which it was written. Here are worldly substance and deeded land in the same line; uttered in the same breath. If any thing short of the word heirs will satisfy, this ought. If words tantamount will answer, I am at a loss for any stronger words than the testator has used. If this is not a necessary indication of a fee, I know not what will amount to it. We must look to the words in their common use, and to the common language of the country, and of the day when they were used. This will was written in 1758, nearly seventy years ago. Make over, — make over to my son, — make my two deeds over to my son; — is the strongest phraseology an illiterate countryman of that day would use, in giving the most absolute estate. “What I have I intend to settle in this manner,” shows an intention to dispose of the whole estate. It is as strong as if the testator had said, all my estate I dispose of in this manner; and the case is stronger, because of the word settle. By this expression, the testator shows he meant to settle his whole estate. Tuffnell v. Page, Barnard, Ch. Rep. 14, 15. It satisfies my conscience of the intention of the speaker, when used by a common countryman, as fully as the word heirs from the mouth of a lawyer. In Wright v. Denn, 10 Wheat. 244, where there was a pretty rigid construction put on' the words of a will, yet it was granted, that the words lands an*d tenements do sometimes carry the fee, and are not confined to local description, though, in the ordinary sense, they import the latter only; and when a more extensive signification is given to them in wills, it arises from the context, and is justified by the apparent intention, to use them in a more extensive signification. Taking this as a rule, and it is a just and true one, does not the apparent intention of the testator justify the most extensive signification of the words that can be given to them? The words, “ whereon I now live,” denote the *97 locality of the premises; “which hath two deeds,’5 the quantity of interest, the title. Whatever makes manifest the intention to the legal eye, we'have seen is sufficient to give a fee. “ Freely to be possessed and enjoyed.” Hoge v. Hoge, 1 Serg. & Rawle, 151. The testator gave to one of his sons a tract of land, provided he lives and enjoys it. The Chief Justice inclined to think that he took a fee, because the expression was, that, he shall enjoy the land, and.no restraint of any kind is laid on him. All my share or part, by one tenant is common to another, — property,—all my worldly effects, both real and personal, — all I shall die possessed of,— all I am worth in the world, — my lands wholly, — my improvement held by settlement right, — my freehold property, — my lands of inheritance, — the lands I hold by heirship. Noné more strongly .denotes inheritable interest than my deeded plantation; many of them by no means so strongly. My deeded plantation to my son George, I make over, does as clearly denote the interest, as if he had said, I make over my fee lands. It conveys, in the emphatical language of the country, an unlimited estate, fee simple; it is a denomination o.f interest. Men’s wills should be construed according to the known signification of words in the country where they are used. Circumstances may discover the intent of a testator. The clauses of a will may be united and taken together, so as to make a devise, which, on its face, is only for life, a fee. The introductory clause is always material and important, and very frequently, in devises of this kind, is considered as repeated in every subsequent clause. Bramstone’s Lessee v. Holyday, 3 Burr. 1635, 1 Bl. R. 533. It is no objection to the force of the introductory clause, that it is the ancient hackneyed preface to all wills, and inserted of course by every schoolmaster in the country. That objection would not hold in this ease, for this will most probably was of his own drawing. From the spelling, he could not have- had the poor aid even of a country schoolmaster. He must have been inops consilii indeed.
But we have American, decisions, decisions in our own courts on these very words. All my right in the Patentees’ woods, to my children, gave a fee. Newkerk v. Newkerk, 2 Caines, 345. In Caldwell v. Ferguson, 2 Yeates, 380,—nqt a hasty Nisi Prius decision, but one of a full court, on a point reserved, “I give to Hugh ÁPFadden, or his heirs, two hundred acres of patented land, on the waters of Warrior’s River, as mentioned in the said patent, and the other undivided one hundred acres, I leave to my nephew Benjamin, according to the judgment of my executors dividing the same,” passed an estate in fee. And although it must be admitted, that the decision went particularly on the ground of its being uncultivated land, in which a life estate could not be of any benefit to Benjamin, yet the learned Judge Shippen, not disposed to unravel settled rules of property, was struck with the circumstance, that the testator takes notice that the land Was patented, and considered *98 it as one circumstance, which could not fail to impress a belief, that he meant to give-a greater estate than for life. “ It shows,” he said, “ that he had.his patent in his eye; that he had it in his mind that he had a legal estate in fee simple in the premises; and not restraining the duration of the estate was a circumstance, though but a slight one, that he meant to give the whole estate he himself had in it to his devisees.” Judge Shippen had before said, that wherever there is an expression in the will which the court can lay hold of to enlarge the estate of the devisee, they,will do so to effectuate the intention of the testator. Long before this, Chief Justice Hale had said, the meaning of a testator is to be spelt,out by little hints. And our venerated judge concludes this valuable opinion with the remarkable saying, — “On the whole, therefore, I am satisfied in my conscience, from the words of the will, connected with the nature of the property devised, that the testator intended to give a fee simple to the objects of his bounty.” In Roe v. Blackett, 1 Cowp. 235, the same test had been adopted by Lord Maksfield, who held that to make a devise of lands, without any limitation, a fee simple, such a manifest intention must appear that the testator intended to give a fee, as may satisfy the conscience of the court in pronouncing it such. And, after all, this short test contains the body and spirit of the law. The word estate has run the gauntlet through all the courts of Westminster Hall. Many fine spun distinctions about at and in defeated the intention of many testators. Common sense at last prevailed, and broke the magic circle; and now the word estate, even where it is a local description, gives a fee, unless restrained by words expressly denoting an intention to give a less interest.
The cases are not numerous in Pennsylvania. In Busby v. Busby, 1 Dall. 226, (the first reported decision,) it was held but an estate for life, because the words, as to all my worldly estate, were unconnected with any particular devise, and because the circumstances of intention, for life and in fee, were nearly balanced. French v. M‘Ilhenny, 2 Binn. 13, was by no means so strong in favour of intention to give a fee. Mr. Justice Yeates, not disclaiming all English authorities, decided on the principles of those authorities, as he understood them. The introductory words he looked on as a strong circumstance, when aided by the manner in which the testator devised his plantation. The weight of its authority, as a precedent, in a will exactly alike, is demonstrated by the difference of opinion among the judges. Clayton v. Clayton, 3 Binn. 476, wanted many of the features of fee simple, discoverable in this case. There was no introductory clause, no mixed devise of real and personal estate, no declared purpose of the testator defeated. It was a devise óf the plantation on which he then lived, without any reference to the title by which the testator held it, which was considered as a description of the thing, and not the interest in it. Morrison v. Semple, 6 Binn. 94, in which *99 the word property was first decided in this country to give a fee, was because the word property signified the right and interest in the thing; and, when that decision was made, it .was not only unsupported by any English authority then known, but in direct opposition to adjudged cases; for in 28 Eliz., Erasmus Cook's case, 'a devise by a co-parcener to a stranger of her property, without other words, was. held only to be an estate for life, for the word doth but signify her part in the land. Swinb. 155. And in 36 El. S. B. 15, it is said, that the words, all his lands, shall not be construed to mean the estate in the land. And when we are met by a decision of an early day in England, one may, without any offence against the laws of the land, say, that different rules in the construction of wills now obtain. Two hundred'years ago the judges decided that the word property gave only an estate for life;, but in our day, in 1812, (Shell v. Pattison, 16 East, 221,) it has been held, that the word property is large enough to. carry the interest in the estate. And it is a remarkable coincidence, that about the same time, in Morrison v. Semple, the same construction was given, and for the same reason, — that property, signifies the right and interest; and deeded plantation, are not' as unapt words to carry a fee. I may, with great truth, claim that the current of authority in this state is in favour of the liberal construction.
I pass over the various conflicting decisions in England, with this further observation, that the intention of the testator, in tifióse kinds, of devises, has a growing influence; and that both here and there, the bent of the courts is, to lay hold of any expression which manifests an intention to give a fee, and so to construe them. The decisions of the several courts of the union, New York, Massachusetts, Virginia, South Carolina, as well as the Supreme Court of the United States, have the same inclination. In Maryland, before the revolution, in a cause in which the first talents were employed, and which was finally decided in a court Of the last resort, by judges surpassed by none in North America, Winchester's Lessee v. Tilghman, 1 Harr. & M‘Hen. 452, after the introductory clause, expressing an intention to dispose of all his worldly estate, the testator, after giving the house and plantation to his wife for life, and an estate tail to his granddaughter in other lands by technical words of limitation, and to his son T. a like estate, proceeded to the devise in question:- — c£I give and bequeath to my daughter Elizabeth three hundred acres of land lying in Kent and Queen Anne counties-, called Pharsalia, but no part of my personal estate." This was decided, in the Provincial Court, in 1-772, to give a fee; and in 1775 the judgment was affirmed ift the Court of Appeals, S. Chase, and Paca for the plaintiff, and Johnson, Tilghman, Cooke, Halliday, and Goldsbohough, for the defendant. The leading case in Virginia is Kennon v. M'Roberts, 1 Wash. 96: "As touching my worldly estate, my will *100 I will and bequeath all my land in Ochaney Island and Fenny Wood, to my son Robert, and to my son Thomas all my lands at Cargill,-and to my beloved wife and daughter, all the rest of my estate,real and personal:” held, that the sons took an estate in fee. In South Carolina, there are numerous cases to the same effect. Wheatly v. Wheatly, 1 Dessaus. 80, Waring v. Middleton, 3 Dessaus. 249, and Clarke v. Mitchell, Id. 168. The testator, after the usual introductory words of an inténtion to dispose of his whole estate, proceeds, — “1 bequeath to my son John the choice of my two tracts of land, and the other tract I desire to be sold, and the money to be divided between my two daughters:” held, the son had an estate in fee, first, on account of the introductory words, secondly, because the testator intended a preference to' the son, giving him a choice; and yet after he had made his choice, he would be in a worse situation than his daughters. So, here, the testator intended to prefer his eldest son* George, by giving him the mansion place. To John he gave his plantation in East Nantmill township: to his daughters Rachael and Margaret,.the plantation in East Fallow field: to his daughters Mary, Ruth, and Jlnnj fifty pounds each, when they came of age; and to Elizabeth as much as, added to what she had already, would make'fifty pounds, out of his personal estate. Now, by construing the estate of George to be but for life, you make havoc of the testator’s intention. The daughters, who got their equal portions in money, on George’s death would come in for another portion out of the land, thus obtaining-a double -portion. Nothing could more derange the whole plan of the testator. It is irreconcilable, that a father setting out with a declaration that he intended to dispose of all his worldly substance among his children, when he comes to partition it out among them without limitation, should intend less than a fee, — less than his own interest in the lands, when he give's to his sons their portions in la.nd, and to his daughters their portions in money. In Massachusetts, in the case of Richardson v. Noyes, 2 Mass. R. 58, the will begins with the introductory clause, as to the testator’s estate. The devise, in question was in these words,I give to my sons John, James, and William, all my other lands lying in Sudbury.”- Mr. Justice Sedgwick, who delivered the opinion of the court, said, “We are inquiring for the intention of the testator, and it is clear, from avi,ew of the whole interest, the preamble, the provision he makes for. his children, and the ultimate disposition of the residue, that he intended a complete disposal of all the property he should .leave behind him; and I have no doubt he intended his sons should take an estate of inheritance.” To the same purpose is Cook and others v. Holmes, 11 Mass. R. 528. In New Hampshire, Fagg v. Clarke, didams, 163, after the introductory clause of intention to dispose of his whole estate, the testator devised as follows: “I will all my landed property in N. to J. D.” The devisee took a fee. In New *101 York, I have already noticed the case of Newkerk v. Newkerk. In 17th Johns, there are two decisions. Ferris v. Smith, page 221, is a strong case, I admit, in favour of an estate for life, but it is distinguishable from this in two essential particulars. The word land there was purely descriptive, there was no mixed devise of real and personal estate, and (which alone would show it to be matter of description,) it is, “ my land beginning at the river and running west;” and the omission of .one word, and inserting another, we have seen, may give a turn to the whole devise, for- it is manifest that courts catch at every thing to enlarge the estate. In Jackson v. Housel, 17 Johns. 281, Chief Justice SpbNCer, in considering the effect of the word property as to giving a fee, and after citing Morrison v. Semple with his full assent, “If ft be objected,” said he, “that a devise of one’s property has not been heretofore adjudged to convey all the interest of the devisor in any of the English cases, I answer, I am not apprized of any case to the contrary. The terms, all my property, are extensive, and as comprehensive as all my estate, or all my effects, and they were not technical words to vest a fee;, they were rendered operative, because the intention of the testator was manifest that a fee should pass. The maxim, qui hseret in litera hseret in cortice, might well be applied to any judge, who would refuse to carry into effect the intention of a testator, where that intention is pla'in, and where he employs words as significant and comprehensive as those which have been adjudged to carry a fee.” We have seen, that judges in England have gone thus far lately in contradiction to former decisions, as to the word property, and we are not bound to -wait until they decide on the words, deeded lands, that they carry a fee, because such a mode of expression is not used in that country, and is peculiar to Pennsylvania. As denoting the legal title, this may not be the technical meaning of the words, but they are apt words, words of a general signification; not merely of locality^-, but of title. It has not escaped us, that this is a mixed devise of real and personal estate, a matter by no means unimportant in ascertaining the testator’s intentions. Mr. Justice Story, in Wright v. Denn, observed, that it operated most strongly on the mind of Lord Harbwicke, in Grayson v. Atkinson, 1 Wils. 333; and there is, to this purpose, the strong case of Johnson v. Johnson, 1 Munf. 549, where it was held, that where an illiterate testator, uses the same words in devising his real and personal estate in the same clause, it is fair to infer that he intended to give them the same effect. It cannot be pretended but that, if George had died, his representatives would have been entitled to his personal estate, and if he had left a son, that son would have been entitled to the two good horses and ploughs, the heir looms; but he would have no land to plough. The testator intended the horses and ploughs and the lands devised to his sons should go together; and it is from these little hints of a testator, ignorant and illiterate, (as the pen *102 ning of'this will shows this testator to have been,) that his intention is to be spelt out; and an attention to these circumstantial evidences of intention is always paid by judges, for in Wright v. Denn, the opinion is closed by the court with noticing the want of the introductory clause, and distinguishing that from all other cases bearing on the question, and which always show an intention to dispose of the whole property. Here is this introductory clause, the absence of which was considered as so important, — here is the mixed devise of real and personal estate, so significant,'- — here is plantation, with its title, so demonstrative: in short, nothing is wanting but the technical word heirs. But there is further light, if there be any obscurity, cast on. the intention of the maker of this will, from-an examination of the whole scope and plan of the will. The settled rule is, only an estate for life where there are no words of limitation, or other words in the will, to show the testator’s intention to pass a fee, or unless the devise be for special purposes, which cannot' be effected without a larger estate than one for life. It is, then, to be seen whether, in order to effectuate the views of this testator, to be collected from, the whole scope of his will, it is not necessary, to give such estate, and whether giving a less one would not frustrate his. whole plan. The support of a young family, until they come of age to take care of themselves, and a residence, for a widow, are always moving points with men who do not leave large monied estates; provision for his wife, his children, and his grandchildren; keeping them together, under the care of their mother, in the mansion house, as they had been maintained and educated in their father’s lifetime, until George came of age. The children were small,' — George, the eldest son, about eight years of age; the personal estate was to be kept together until he came of age, “ and after George comes of age, my wife is to have such part of the house she pleases, while she lives a widow.” Now, if George had only a life estate, on his death the mansion plantation would pass directly over to his brother and sisters; and, if he left a son, the favourite of the law as it then stood, he would be nearly disinherited, for he would have two ninths only of the mansion plantation; and this in direct opposition to the only reason given in the law why he should not inherit the whole, viz. to prevent the disinheritance of the heir. Now, George’s son would be the very heir and favourite of the law, whom the law would thus disinherit; for he would have a double part in lineal, and the whole in collateral descents. When.George arrived at full age, these great changes were to take place. The personal estate was to be divided, the family to break up, George to take possession of the mansion, his mother to have a choice of an apartment in it for life. There is no provision for the death of George under twenty-one, nor for the maintenance of the widow and children, nor for his own' children) sU deprived of their maintenance, education, and cchociisg, the widew of & hoeas, 'i\& sícsh co.i- *103 sequences, quite inconsistent with the design of the testator, and to effectuate his intention, George must have an estate commensurate with it. A life estate would not be sufficient for that purpose,— it could be no other than an estate'in fee, because the estate to the widow, which is an estate of freehold, the maintenance and education of the children, are carved out of the immediate estate given to George, which is a present devise. An estate for life would not be adequate, for on his death, his estate, and all incidents and de-pendences on it, would cease. The mansion house and the personal property, and the mother and children were to be maintained together, as in the father’s lifetime, until George came of age; but if he died under twenty-one, all would be separated. The estates must be separated, and the wife and children must be separated; for there is no other means provided for keeping them together.
There are cases much stronger than this, to show that a fee must of necessity be given. I put some of them by way of illustration: A testator devises to A. B. without words of .limitation, but on condition that he should not suffer the husband of his daughter to come on the premises, on any condition whatsoever: held, that in order to effectuate the intention of the testator to exclude his son-in-law at all events from coming on the premises, which he might otherwise do on A. B’s. death, it was necessary to give A- B. a fee. So, in Mudge v. Blight, 1 Cowp. 352, where the testator gave to his wife the west part of his dwelling-house, with as much wood croft home to her as she shall have need of by my executors, hereafter named, and devised the lands to the executors without words of limitation, it was considered a circumstance of weight to give a fee, because the stock of wood on the estate might fall short of her necessities; and it was but reasonable to infer, that such an interest was intended, as would enable them to comply with the testator’s direction, fully and completely in every respect.
I agree that the devise of the plantation will not pass the fee, but I take this whole will in connexion; the introductory clause in connexion with the devising clause, the deeded land as synonimous with fee, the mixed devise of real and personal estate, the maintenance of the wife and children. .1 view its whole complexion. The will being in general terms, while viewing them in one sense, a complete disposition of the whole, will answer every view of the testator; taking them in another, will leave a chasm;, and frustrate his whole design. I think it is the duty of courts to take them in that sense which is most likely to be agreeable to the testator’s intention. Ibbotson v. Beckwith, Talbot's Cases, 157. The inclination of judges of modern times, is, where the words are capable of an extended signification, so to take them, and not to make them ■ a matter of mere description, where the testator did not use them in that sense, but as conveying the interest. The only difference *104 between wills and deeds is, that in the latter, technical words are necessary to pass a fee, but in the former, equivalent words, words importing such intention. They must be plain and manifest, and not left to the latitude of a guess. There is but one rule, the dictation of plain common sense, so long as courts of justice profess an adherence to the plain intention as their guide. If they do at some times give way to the legal construction, and at other times it shall not govern, there will be no rule to judge by, nor will any lawyer know how to advise, which is a mischief courts ought to prevent. Better at once to discard all regard to intention, and return to the strict construction which prevails in deeds, or adhere firmly to the intention, when that can fairly be made out; but not at one time to judge by one rule, and at another time by another rule. I, for my own part, do not think it is treating a man’s will fairly, when you entertain no, doubt of his intention, to put a rule of eases, when it possible there might have been a.n intention different, from an apparent, visible, and manifest meaning. Nor do I think it a just interpretation of a man’s will to look for different uses of the words by other persons, when we have the index of the testator’s mind to resort to, in the instrument itself. When he has said, uBy my worldly substance, I mean my deeded plantation,” we ought to give the words their largest sense, construe them in their most comprehensive signification, when that is the sense in. which the testator has employed them.
I conclude an opinion, which to many may appear tedious. My excuse is, the deep impression in my mind of the general importance of the subject, and of the great door to litigation that will be opened, by going back to a strict construction'of the words in this country,, where every man who can write his name considers himself competent to draw any will, and where the act itself is left too often for the last moments. But I close in the words of Judge Shippen and Lord Mansfield, that, on the whole, I am satisfied in ray conscience, from the words of the will, from its whole tenor and complexion, that the testator intended to give an estate in fee to all his children to whom he devised his lands, in the same manner as he intended those to whom he gave money and not lands, — - the whole property in it, and not the use of it. In coming to this conclusion, I have confined myself within the pale of prior decisions. I hope my wishes to effectuate the intention of the testator, (which those admit who differ from me, and which they regret they cannot reconcile with their idea of the rules of law, to carry into effect,) have not been the father óf my thoughts; and that an adherence to the principles of law, or rather to the evidences of intention, and rules of interpretation have guided me. I may be mistaken in the law; I ought to be diffident and feel distrust, but I have given my honest judgment, according to my best knowledge, and I am only anxious to be understood, as not. shaking off dependence *105 on settled interpretations, but professing to be governed by them, though I may have misunderstood them.- I am, for this reason, of opinion the judgment should be reversed. -
I entirely agree with the Chief Justice, for the reasons given by him, that the acknowledgment of the conveyance, by the feme covert, is radically defective, and of no validity.
Judgment affirmed.